LAW OFFICES OF JONATHAN D. MCDOUGALL
JONATHAN D. MCDOUGALL, CA BAR NO. 212359
  JDMESQUIRE@HOTMAIL.COM
1640 LAUREL STREET
SAN CARLOS, CA 94070-5217
TELEPHONE:  650.954.4200
FACSIMILE:   650.954.4205

PAMELA L. JOHNSTON, CA BAR NO. 132558
  PJOHNSTON@FOLEY.COM
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2411
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

Attorneys for Defendant
GREGORY JAMES CHRISMAN

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>          vs.<br><br>GREGORY JAMES CHRISMAN,<br><br>                              Defendant. | Case No. 3:18 CR 390 VC<br><br>**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND COMMUNICATIONS WITH DEFENDANT CHRISMAN'S DOCTORS AND THE FRUITS THEREOF**<br><br>**HEARING DATE**:<br>JUDGE: Hon. Vince Chhabria<br>DATE: October 8, 2019<br>TIME: 10:30 a.m. |

## NOTICE OF MOTION AND MOTION TO SUPPRESS

PLEASE TAKE NOTICE that Defendant Gregory James Chrisman ("Mr. Chrisman") is requesting that this motion to suppress be heard on October 8, 2019[1], at 10:30 a.m. in the Courtroom of the Honorable Vince Chhabria, which is Courtroom four at 450 Golden Gate Avenue, San Francisco, CA 94102.  This is the date set by the Court for this motion to suppress.  First, Mr. Chrisman seeks the suppression of all statements that Mr. Chrisman has ever made to the FAA as part of the Form 8500 / AME examination process as compelled statements that are protected from admission in this criminal case by *Garrity*.  Second, Mr. Chrisman seeks to suppress the information learned from the agents' interviews of Dr. Bussey in June 2018 and Dr. Brath in August 2019 and the fruits of those interviews including agent testimony about them and testimony from Dr. Bussey and Dr. Brath themselves.

This notice of motion and motion are based on this motion, the attached Memorandum of Points and Authorities, the attached declarations of Gregory Chrisman and Pamela Johnston, the Exhibits

---

[1] This motion is the same as the under seal version lodged with the Court on September 10, 2019, in order to keep the materials the same as those provided to the Court and served on the government on that date, except that the date for the hearing has been updated to reflect the date set by the Court for the hearing.  Most of the private health and mental health information contained herein, after reflection, parallels the health and mental health already discussed, in substance, in the public record in this case.  While such things as a PTSD condition should be treated as private and is covered by HIPAA, it is already in the public record due to the actions of the government so that issue is moot at this point.  However, exhibit 3, which is a copy of a completed Form 8500 contains personal information that needed to be redacted.  The lodged copy has the whole form.  The attached exhibit 3 is redacted to protect the private information not otherwise in the public record in this case.

1     attached to the Declarations, other filings in this case, examination of witnesses during the evidentiary

2     hearing on the motions to suppress, and any oral argument that the Court may consider.

3

4                                      **LAW OFFICES OF JONATHAN D. McDOUGALL**

5                                      Jonathan D. McDougall

6

7    DATED:  September 18, 2019            **FOLEY & LARDNER LLP**

8                                      Pamela L. Johnston

9

10

11                                 By:  */s/ Pamela L. Johnston* _____

12                                       PAMELA L. JOHNSTON
                                      Attorneys for Defendant

13                                       GREGORY JAMES CHRISMAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................6

II.     FACTS ......................................................................................................................7

III.    ITEMS TO BE SUPPRESSED................................................................................8

        A.      ALL AME DERIVED INFORMATION AND THE FORM 8500S ............8

        B.      INTERVIEWS OF CHRISMAN'S DOCTORS........................................8

IV.     LEGAL STANDARD................................................................................................9

        A.      STANDING ................................................................................................9

        B.      CHRISMAN'S STATEMENTS TO DR. BRATH WERE COMPELLED
                STATEMENT PROTECTED FROM USE AS EVIDENCE......................10

        C.      THE SPECIAL AGENTS COMMUNICATIONS WITH DR. BRATH
                VIOLATED CHRISMAN'S FOURTH AMENDMENT RIGHTS ............11

                1.      Reasonable Expectation of Privacy -- HIPAA ..............................11

                2.      Mr. Chrisman Did Not Waive his Right to Privacy.......................13

                3.      Chrisman did not Provide his Consent to the Release of His
                        Medical Information ......................................................................14

                        a.      Consent was not Provided by Chrisman Through the Form
                                8500 Statement of Privacy ..................................................14

                4.      Chrisman's Communications with Dr. Barth are protected by the
                        Psychotherapist-Patient Privilege .................................................16

                5.      Dr. Brath and Dr. Bussey Could not Voluntarily Consent on Mr.
                        Chrisman's Behalf ........................................................................18

                        a.      The Crime-Fraud Exception does not Apply to
                                Communications with Mr. Chrisman's Doctors .................19

V.      CONCLUSION.......................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bumper v. North Carolina,*
    391 U.S. 543 (1968).....................................................................................................18

*Burdeau v. McDowell,*
    256 U.S. 465 (1921).....................................................................................................13

*Caver v. City of Trenton,*
    192 F.R.D. 154 (D.N.J. 2000).....................................................................................18

*Finley v. Johnson Oil Co.,*
    199 F.R.D. 301 (S.D. Ind. 2001).................................................................................17

*Garrity v. New Jersey,*
    385 U.S. 493 (1967)...........................................................................................4, 6, 8, 9

*In re Grand Jury Proceedings,*
    87 F.3d 377 (1996)...............................................................................................19, 20

*In re Grand Jury Proceedings (Gregory P. Violette),*
    183 F.3d 71 (1st Cir. 1999).........................................................................................20

*In re Grand Jury Subpoena 92-1(SJ),*
    31 F. 3d 826 (9th Cir. 1994).......................................................................................20

*In re Icenhower,*
    755 F.3d 1130 (9th Cir. 2014)....................................................................................20

*Jaffee v. Redmond,*
    518 U.S. 1 (1996)..................................................................................................16, 17

*Lefkowitz v. Turley,*
    414 U.S. 70 (1973)......................................................................................................11

*National Ass'n of Letter Carriers, AFL-CIO v. U.S.P.S.,*
    604 F. Supp. 2d 665 (S.D.N.Y. Mar. 30, 2009)......................................................9, 10

*Schneckloth v. Bustamonte,*
    412 U.S. 218 (1973)..............................................................................................18, 19

*Smith v. Maryland,*
    442 U.S. 735 (1979)................................................................................................9, 10

*United States v. Brown,*
    563 F.3d 410 (9th Cir. 2009) .....................................................................................18

*United States v. Fields*,
113 F.3d 313 (2d Cir. 1997)..........................................................................................9

*United States v. Lopez-Cruz*,
730 F.3d 803 (9th Cir. 2013) ......................................................................................9

*United States v. Ocheltree*,
622 F.2d 992 (9th Cir. 1980) ....................................................................................13

*United States v. Page*,
302 F.2d 81 (9th Cir. 1962) ......................................................................................19

*Weiland v. City of Concord*,
Case No. 13-cv-5570-JSC, 2014 WL 5358756 (N.D. Cal. Oct. 20, 2014)...........17

*White v. White*,
925 F.2d 287 (9th Cir. 1990) ....................................................................................13

*Williams v. District of Columbia*,
No. Civ. A. 96-0200-LFO, 1997 WL 224921 (D.D.C. Apr. 25, 1997) .................18

**Statutes**

18 U.S.C. § 1001(a)(2)........................................................................................................13

United States Code Title 18 ......................................................................6, 8, 15, 16

FAA 8500-8 ........................................................................................................................18

Health Insurance Portability and Accountability Act of 1996.....................................11, 12, 19

**Other Authorities**

45 C.F.R. § 160.103 ...........................................................................................................11

45 C.F.R. § 164.506 ...........................................................................................................12

45 C.F.R. § 164.512(e) .......................................................................................................12

45 C.F.R. § 164.512(f) .......................................................................................................12

https://www.faa.gov/about/office_org/headquarters_offices/avs/offices/aam/ame/guide/app_process/general/privacy/ ...........................................................................................17

https://www.faa.gov/pilots/medical/ ...............................................................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant Gregory Chrisman ("Mr. Chrisman"), a long-time pilot for Southwest Airlines and the U.S. Air Force, brings this motion to suppress on two separate and unrelated grounds.  First, Mr. Chrisman brings this motion to suppress all statements he has ever made to the FAA through the Aviation Medical Examiner ("AME") examination process, including all Form 8500 forms and all discussions with all doctors because these statements are immunized statement pursuant to the principles of *Garrity*.  Specifically, this Court should suppress Mr. Chrisman's statements to the FAA, through the AME examination process / Form 8500 process, as the introduction of such statements and Form 8500s would be in violation of the principles of *Garrity v. New Jersey*, 385 U.S. 493 (1967).  Second, this Court should suppress all statements and information from government agent interviews of Dr. Brath and Dr. Bussey because those interviews violated Mr. Chrisman's right to privacy regarding his medical information by interviewing his doctors who had possession of private medical and mental health information obtained from Mr. Chrisman and a treating psychotherapist.

Like police officers forced to submit to interviews after a shooting incident in order to avoid being removed from office, Mr. Chrisman is obligated to undergo medical and mental health examinations on pain of losing his job.  While not a traditional application of *Garrity*, the *Garrity* principles of immunized testimony apply here as well.  The FAA compels the medical interviews and psychological examinations to ensure safety in the skies; indeed, Mr. Chrisman would be stripped of his medical certification that is otherwise necessary for him to remain a pilot if refuses to submit to the medical interviews and psychological examinations.  If the compelled person's statements are problematic, as the government alleges here, the remedy is to address them civilly pursuant to the FAA's regulations.  The "Statement of Privacy" in the Form 8500 that Mr. Chrisman has to fill out and submit to the doctor doing the FAA's required examination provides that the information can be used to bring an administrative action for a violation of the FAA's regulations.  There is no such exception to bring a Title 18 criminal case for anything; the only related criminal exception is for a prosecution for drugs.  That is not applicable here.

These pilot-related Form 8500 cases are not frequently charged, and defense counsel has not

1   been able to find a single instance of one of these cases going to trial.  Instead, they are rarely charged

2   and, when they are, they ordinarily resolve through a plea to a misdemeanor.  (*See* Declaration of

3   Pamela L. Johnston in Support of Motion to Suppress ("Johnston Decl."), ¶ 1, Ex. 1).  Accordingly, as

4   these cases are largely untested in the Courts, major defects in them, such as the ones that Mr. Chrisman

5   presents here, remain unaddressed.

6   **II.   FACTS**

7        Mr. Chrisman is a pilot currently for Southwest Airlines.  He was an Air Force pilot before then

8   for 20 years during which he saw combat.  (Declaration of Gregory J. Chrisman in Support of Motion to

9   Suppress ("Chrisman Decl."), ¶ 1).

10       For many years, Mr. Chrisman attended AME examinations and submitted Form 8500s as part of

11  that AME process every six months in order to obtain his required medical certification to remain a

12  pilot.  (Chrisman Decl., ¶ 3).  Through his evaluations, Mr. Chrisman disclosed confidential information

13  related to his medical and mental health conditions and illnesses.  Mr. Chrisman disclosed the

14  confidential information with the reasonable expectation that it would remain confidential and not be

15  disclosed without his consent.  (*Id.* at ¶ 9).  At no point did Mr. Chrisman ever provide consent for the

16  release of his confidential medical and mental health information for use in a criminal prosecution.  (*Id.*

17  at ¶ 14).

18       On June 25, 2018, special agents contacted Dr. Stuart Bussey.  (Johnston Decl. ¶ 2, Ex. 2).  The

19  special agents interviewed Dr. Bussey about Mr. Chrisman's Form 8500.  ( *Id.*).  During the interview,

20  Dr. Bussey immediately informed the agents that Mr. Chrisman had completed his examination a mere

21  hours prior to their arrival, but had passed his medical examination.  (*Id.*).  Mr. Chrisman was never

22  informed that the special agents had sought information regarding his medical and mental health

23  examination, nor did he ever provide consent to Dr. Bussey to disclose this confidential information.

24  (Chrisman Decl. ¶¶ 11-14).  Further, the agents requested that Dr. Bussey not disclose the interview,

25  including the discussion of Mr. Chrisman's medical and mental health file, to Mr. Chrisman.  (Johnston

26  Decl. at ¶ 2, Ex. 2).

27       On April 17, 2019, special agents contacted Mr. Chrisman's AME, Dr. Brath.  (Johnston Decl.

28  at ¶ 3, Ex. 3).  The agents interviewed Dr. Brath about Mr. Chrisman and his medical and mental health

1   conditions.  (*Id.*).  Through the interview, the agents inappropriately obtained protected medical and

2   mental health information for the purpose of bolstering the government's Title 18 criminal case.  Neither

3   the special agents nor Dr. Brath requested Dr. Chrisman's consent so that Dr. Brath could disclose Mr.

4   Chrisman's confidential medical and mental health information.  Indeed, Mr. Chrisman never provided

5   consent to his treating doctors to disclose the information and communications that he shared with them

6   related to his medical and mental health treatment, diagnoses and illnesses.

7        On August 12, 2019, the government provided a copy of Dr. Brath's memorandum of interview.

8   Soon thereafter, the parties stipulated to a trial continuance to allow the defense to review the newly

9   produced evidence and to allow the parties to try and resolve the matter without the need for the present

10  motion to suppress.  To date, Mr. Chrisman has not given consent to the disclosure of his medical and

11  mental health information.

12  **III.    ITEMS TO BE SUPPRESSED**

13       **A.    ALL AME DERIVED INFORMATION AND THE FORM 8500S**

14       As noted in the introduction, Mr. Chrisman brings this motion to suppress all statements he has

15  ever made to the FAA through the Aviation Medical Examiner ("AME") examination process, including

16  all Form 8500 forms and all discussions with all doctors.  This Court should suppress Mr. Chrisman's

17  statements to the FAA, through the AME examination process / Form 8500 process, as the introduction

18  of such statement would be in violation of the principles of *Garrity v. New Jersey*, 385 U.S. 493 (1967).

19       **B.    INTERVIEWS OF CHRISMAN'S DOCTORS**

20       On June 25, 2018, agents interviewed Dr. Stuart Bussey related to Mr. Chrisman's Form 8500

21  responses.  In particular, during the interview, Bussey acknowledged that Mr. Chrisman had been

22  examined only hours earlier that day and passed his medical examination.  Even more shocking, Dr.

23  Bussey disclosed information related to Mr. Chrisman's medical and mental health conditions, including

24  his prior struggles with alcoholism [and post-traumatic stress disorder ("PTSD")]. (Johnston Decl., ¶ 2,

25  Ex. 2).[2]  After interviewing Dr. Bussey and obtaining Mr. Chrisman's confidential medical and mental

26  health information without obtaining Mr. Chrisman's consent, the agents also requested that Dr. Bussey

27

28

---

[2] Dr. Bussey actually noted that even with the added information, he believed the FAA would still allow Chrisman to fly for the time being but need to supply supporting documents to the FAA.

1     not disclose their meeting to Mr. Chrisman, preventing Mr. Chrisman from learning of the unauthorized

2     disclosure of his confidential medical and mental health information.

3         On April 17, 2019, the agents interviewed Dr. William Brath about Mr. Chrisman's medical and

4     mental health file.  On April 29, 2019, the agents contacted Dr. Brath once more for follow-up.  Again,

5     neither the agents nor Dr. Brath obtained Mr. Chrisman's consent to permit Dr. Brath to release his

6     confidential medical and mental health information at this post-indictment stage.

7         Mr. Chrisman seeks to suppress the interviews of Mr. Chrisman's contacted medical providers as

8     well as the subsequent information obtained from the interviews as violative of Mr. Chrisman's fourth

9     amendment right for an unreasonable search and seizure.

10     **IV.**    <u>**LEGAL STANDARD**</u>

11       **A.**      **STANDING**

12         Mr. Chrisman has standing to bring forth his motion to suppress.  "To contest the validity of a

13     search, a defendant must demonstrate that he himself exhibited an actual subjective expectation of

14     privacy in the area searched, and that this subjective expectation is one that society is willing to accept

15     as reasonable." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (*citing Katz v. United States*, 389 U.S.

16     347, 361 (1967); *see also United States v. Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (finding a party

17     "lacks 'standing' in the Fourth Amendment context when his contacts with the searched premises are so

18     attenuated that no expectation of privacy he has in those premises could ever be considered

19     reasonable.").  To evaluate the reasonableness of a privacy expectation, a person's "property or

20     possessory interest" in the place or items searched is generally one factor considered.  *United States v.*

21     *Fields*, 113 F.3d 313, 320 (2d Cir. 1997) (internal citations omitted); *see also United States v. Lopez-*

22     *Cruz*, 730 F.3d 803, 807-08 (9th Cir. 2013).  Here, the government agents sought Mr. Chrisman's

23     medical and mental health records as well as his discussions and evaluations with Dr. Brath.  Courts

24     recognized that individuals have, "at a minimum—standing to bring suit based on a reasonable

25     expectation of privacy in their medical records."  *See National Ass'n of Letter Carriers, AFL-CIO v.*

26     *U.S.P.S.*, 604 F. Supp. 2d 665, 675 (S.D.N.Y. Mar. 30, 2009).

27         Here, the government agents conducted a search without a warrant and without Mr. Chrisman's

28     consent. (Chrisman Decl. ¶¶ 12, 14).  Mr. Chrisman seeks to suppress the use of his medical records and

communications with his doctors, including, Dr. Brath and Dr. Bussey.  Mr. Chrisman has a reasonable expectation of privacy related to his communications with his doctors, particularly Dr. Brath, and the resulting diagnoses.  Indeed, Mr. Chrisman had an "actual subjective expectation of privacy" and that expectation of privacy was reasonable.  *See Smith v. Maryland*, 442 U.S. at 740; *see also U.S.P.S.*, 604 F. Supp. 2d at 675 (finding that an employee has a reasonable expectation of privacy in their medical records.").  As such, Mr. Chrisman has standing to bring forth the present motion to suppress.

### B.  CHRISMAN'S STATEMENTS TO DR. BRATH WERE COMPELLED STATEMENT PROTECTED FROM USE AS EVIDENCE

Since 1994, Mr. Chrisman has met with various doctors, including Dr. Elliot, Dr. Rozansky, and Dr. Brath, twice yearly for his medical certification medical and mental health examinations.  The FAA compels these medical and mental health examinations and Mr. Chrisman is required to submit to these examinations in order to maintain his pilot's license.  During Mr. Chrisman's examinations, he has disclosed information related to his underlying medical and mental health conditions.  Mr. Chrisman provided the information of his underlying medical and mental health conditions with the understanding that all discussions with Dr. Brath, and his other treating physicians, were confidential and would not be disclosed.  These communications included a discussion of Mr. Chrisman's medical and mental health history as well as his prior alcoholism that lead to him being put into a monitoring program.  The information provided was compelled testimony Mr. Chrisman was compelled to provide to obtain his medical certification and keep his employment.  Under *Garrity v. New Jersey*, such compelled testimony is not admissible as evidence as it is immunized.

In *Garrity*, the Supreme Court held that the Fifth Amendment privilege against self-incrimination bars the government from using statements compelled under a threat of a job loss in a subsequent criminal prosecution.  *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967) ("We now hold the protection of the individual under the Fourteenth Amendment against coerced statements **prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all**, whether they are policemen or other members of our body politic.") (emphasis added).  Here, Mr. Chrisman confided in his doctors, primarily Drs. Brath and Rozansky, about his alcoholism and related mental health issues.  Mr. Chrisman confided in his doctors because,

under the FAA guidelines, he had no other option.  Mr. Chrisman's failure to fully disclose his medical

and mental conditions would result in the denial of a medical certificate and the ultimate loss of his

employment with Southwest Airlines.  Even if Mr. Chrisman did not want to confide in Dr. Brath and

the others about his mental health issues, he had no choice but to do so in order to remain employed.  *Id.*

at 496 ("Coercion that vitiates a confession… can be 'mental as well as physical'; 'the blood of the

accused is not the only hallmark of an unconstitutional inquisition.'")  Just like in *Garrity*, "the choice

given [] was either to forfeit [his] job[] or to incriminate [himself]. The option to lose [his] means of

livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to

remain silent." *Id.* at 497.  Because Mr. Chrisman effectively had no choice but to disclose his medical

and mental health issues or face the repercussion of losing his employment, his statements were

compelled and thus under Garrity are immunized.  *See Lefkowitz v. Turley*, 414 U.S. 70, 82-83 (1973)

("A waiver secured under threat of a substantial economic sanction cannot be termed voluntary.").  As

statements coerced by an AME, a medical examiner acting as a representative of the FAA, the coerced

statements are prohibited from use in subsequent criminal proceedings.

## C.     THE SPECIAL AGENTS COMMUNICATIONS WITH DR. BRATH VIOLATED CHRISMAN'S FOURTH AMENDMENT RIGHTS

### 1.     Reasonable Expectation of Privacy -- HIPAA

Alternatively, Mr. Chrisman seeks to suppress certain statements made to his AME doctors. In

1996, the U.S. Department of Health and Human Services issued the Privacy Rule to implement the

requirement of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  HIPAA

addressed the use and disclosure of individuals' health information, identified as protected health

information, by organizations subject to the privacy rule.  These organizations included covered entities,

which are defined as: (1) health plans; (2) health care clearinghouses; and (3) health care providers who

electronically transmit any health information in connection with transactions for which HHS has

adopted standards.  45 C.F.R. § 160.103.

HIPAA applies to health care providers, including Mr. Chrisman's AME physicians.  Mr.

Chrisman had a reasonable expectation of privacy in his medical and mental health history, including the

provision of health services and information relating to his past, present, or future medical or mental

health conditions.  Disclosure, without consent, is only permitted for treatment, payments, and health care operations, none of which are present in the government's unlawful obtainment of Mr. Chrisman's protected health information.  *See* 45 C.F.R. § 164.506.

Although exceptions exist for disclosure of Mr. Chrisman's medical and mental health information without his consent, the government's requests did not meet those standards.  Under HIPAA, disclosure of protected health information without consent may occur for law enforcement purposes pursuant to:

> (A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;
>
> (B) A grand jury subpoena; or
>
> (C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:
>
>> (1) The information sought is relevant and material to a legitimate law enforcement inquiry;
>>
>> (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and
>>
>> (3) De-identified information could not reasonably be used.

45 C.F.R. § 164.512(f); *see also* 45 C.F.R. § 164.512(e).  Here, we cannot tell from the discovery, but it is possible that the government used a grand jury subpoena to obtain Dr. Bussey's records.  Neither doctor's testimony was obtained in front of the grand jury, as far as the defense knows.  Accordingly, the interviews were not obtained by use of a grand jury subpoena, and it is not clear from Dr. Brath's records were obtained via a grand jury subpoena.

The government's request and ultimate search and seizure of Mr. Chrisman's medical records and protected medical and mental health information did not fall into an exception and thus required Mr. Chrisman's consent.  If, as here, no consent was provided, the obtaining and ultimate use of his medical records and protected medical and mental health information is not only improper evidence, but an

undeniable violation of Mr. Chrisman's expectation of privacy.

## 2.   Mr. Chrisman Did Not Waive his Right to Privacy

To waive a right, a defendant must make a knowing and voluntary waiver of that right. *See White v. White,* 925 F.2d 287, 292 (9th Cir. 1990) ("A waiver of a constitutional right must be knowing and voluntary."); *see also United States v. Ocheltree,* 622 F.2d 992, 994 (9th Cir. 1980) (holding waiver to search invalid when individual was implicitly threatened with illegal detention if he did not consent).  Here, Mr. Chrisman did not waive his right to privacy with regard to his medical and mental health records vis-à-vis criminal agents.  On April 17, 2019, the agents, without Mr. Chrisman's consent, contacted Dr. Brath, a representative of the FAA, regarding Mr. Chrisman's medical file, and interrogated Dr. Brath about the requisite FAA Form 8500 and Mr. Chrisman's responses on the Form 8500.  On April 29, 2019, the agents contacted Dr. Brath once more for follow-up. Again, Mr. Chrisman did not provide consent to the disclosure of his medical and mental health information.  (Chrisman Decl. ¶ 12).

The Fourth Amendment restricts the use of evidence seized by illegal government search and seizures.  *Burdeau v. McDowell,* 256 U.S. 465 (1921).  The government's agents did not conduct its interview of Dr. William Brath, an FAA representative, pursuant to a search warrant or in a grand jury. Indeed, these interviews were conducted after the grand jury, so the government did not and could not use a subpoena to obtain this information.

In reality, the government conducted Dr. Brath's interview as part of its ongoing criminal investigation into Mr. Chrisman's alleged violation of 18 U.S.C. § 1001(a)(2) for purportedly making false statements to the government on FAA Form 8500.  Mr. Chrisman did not provide consent to the release of his medical and mental health information.  (Chrisman Decl. ¶¶ 12, 14).  Alternatively, any implied consent the government is arguing could not be voluntary, as Mr. Chrisman's statements to Dr. Brath and the other doctors, all of whom were representatives of the FAA, was compulsory.

Accordingly, all evidence obtained through the government's communications with Dr. Brath, and the fruits thereof, including but not limited to Mr. Brath's oral statements, must be suppressed.

3. **Chrisman did not Provide his Consent to the Release of His Medical Information**

a. **Consent was not Provided by Chrisman Through the Form 8500 Statement of Privacy**

The government intends to argue that Chrisman provided consent by clicking through the electronic Form 8500. The language in the form that the government points to for consent is contained in the "Statement of Privacy" and states in pertinent part:

Statement of Privacy

The information entered into the FAA MedXPress on-line version of the Form 8500-8, Application For Airman Medical Certificate or Airman Medical and Student Pilot Certificate, is solicited under the authority of Title 49, United States Code (U.S.C.) (Transportation) sections 109(9), 40113(a), 44701-44703, and 44709 (1994) formerly codified in the Federal Aviation Act of 1958, as amended, and Title 14, Code of Federal Regulations (CFR), part 67, Medical Standards and Certification. Except for your Social Security Number (SSN), **submission of this information is mandatory**. Incomplete submission will result in delay of further consideration or denial of your application for a medical certificate or medical clearance. Other than your SSN, the purpose of the information is to determine whether you meet Federal Aviation Administration (FAA) medical requirements to hold a medical certificate or medical clearance. The information will also be used to provide data for the FAA's automated medical certification system to depict airman population patterns and to update certification procedures and medical standards. For air traffic control specialists (ATCS) employed by the Federal Government, the information requested will be used as a basis for determining medical eligibility for initial and continuing employment. The information becomes part of the FAA Privacy Act system of records,

DOT/FAA-847, General Air Transportation Records on Individuals. **These records and information in these records may be used** (a) to provide basic airman certification and qualification information to the public upon request; (b) to disclose information to the National Transportation Safety Board (NTSB) in connection with its investigation responsibilities; (c) **to provide information about airmen to Federal, state, and local law enforcement agencies when engaged in the investigation and apprehension of drug law violators**; (d) to provide information about enforcement actions arising out of violations of the Federal Aviation Regulations to government agencies, the aviation industry, and the public upon request; (e) **to disclose information to another Federal agency, or to a court or an administrative tribunal, when the Government or one of its agencies is a party to a judicial proceeding before the court or involved in administrative proceedings before the tribunal**; and (f) **to disclose information to other Federal agencies for verification of the accuracy or completeness of the information**; and (g) to comply with the Prefatory Statement of General Routine Uses for the Department of Transportation.

(Johnston Decl., ¶ 4, Ex. 4) (emphasis added).

Here, the agent was not involved in a drug investigation so provision (c) does not apply. Instead, the agent was investigating, post-indictment, an alleged violation of Title 18 of the United States Code, so provision (d) does not apply (not FAA regulations). It seems the government seeks to rest its argument on the wording of provision (f) that provides "to disclose information to other Federal agencies for verification of the accuracy or completeness of the information." However, this provision has no application in the present litigation, as the agent's obtainment of Mr. Chrisman's confidential medical and mental health information came after Mr. Chrisman had been indicted. Thus, there was no remaining need to "disclose information to other federal agencies" at this point to verify the accuracy or completeness of the information. The agents were asking Dr. Brath the questions in order to obtain

1    evidence for the trial here in this Title 18 case.  Any later justification by the agent will not hold up and

2    is not supported by the record.  The only possible one is provision (e) which provides that "to disclose

3    information to another Federal agency, or to a court or an administrative tribunal, when the Government

4    or one of its agencies is a party to a judicial proceeding before the court or involved in administrative

5    proceedings before the tribunal."  The interview did not occur in a court proceeding where Mr.

6    Chrisman was present to object.  There is no other federal agency involved.  This was obtained out of

7    court for the agents' use in building their Title 18 case against Mr. Chrisman.  The privacy notice does

8    not cover this situation.

9         Here, the Court should follow Dr. Brath's lead.  According to the agent's report, Dr. Brath

10   indicated that, "he would only provide a copy of [documentation related to Mr. Chrisman's HIMS

11   report] with Chrisman's concurrence."  (Johnston Decl., ¶ 3, Ex. 3).  Dr. Brath is intimately familiar

12   with Form 8500 and his accompanying duties as an AME.  Dr. Brath had not obtained Mr. Chrisman's

13   consent to disclose his medical and mental health information to any third party, much less the special

14   agents asking questions for use at a criminal trial for an alleged Title 18 violation.  Without Mr.

15   Chrisman's consent, any search was unreasonable and in violation of his Fourth Amendment rights.

16        **4.    Chrisman's Communications with Dr. Barth are protected by the**

17              **Psychotherapist-Patient Privilege**

18        Mr. Chrisman's communications with Dr. Brath are also protected by the psychotherapist-patient

19   privilege.  Mr. Chrisman's communications with Dr. Brath were conducted for, and in furtherance of,

20   Mr. Chrisman's treatment and diagnosis of his medical and mental health conditions.  Thus, Mr.

21   Chrisman's communications with Dr. Brath are protected by the psychotherapist-patient privilege.

22   Although all patients enjoy an expectation and right to privacy, the federal common law has been

23   explicit to acknowledge the existence of a psychotherapist-patient privilege.  *See Jaffee v. Redmond*, 518

24   U.S. 1, 9-10 (1996) (finding that the confidential communications between a psychotherapist and her

25   patient 'promotes sufficiently important interests to outweigh the need for probative evidence'" to be

26   recognized as a testimonial privilege).

27              Psychotherapy… depends upon an atmosphere of confidence and trust in

28              which the patient is willing to make a frank and complete disclosure of

DEFENDANT GREGORY J. CHRISMAN'S MOTION TO SUPPRESS EVIDENCE
-16-
Case No. 3:18 CR 390 VC

facts, emotions, memories, and fears.  Because of the sensitive nature of
the problems for which individuals consult psychotherapists, disclosure of
confidential communications made during counseling sessions may cause
embarrassment or disgrace.

*Id*. at 10.  "For this reason, the mere possibility of disclosure may impede development of the
confidential relationship necessary for successful treatment."  *Id*.

Dr. Brath, as an AME, is trained to evaluate airmen for substance or alcohol-related conditions or
other related mental health conditions.[3]  Under FAA guidelines, information should not be released
without the written consent of the applicant or an order from a court of competent jurisdiction.[4]  Here,
Mr. Chrisman did not provide written consent for the release of his mental health information.
(Chrisman Decl. ¶¶ 12, 14).  Further, the government agents did not obtain a warrant or court order from
a court of competent jurisdiction to secure authority to interview Dr. Barth and obtain his medical
analysis of Mr. Chrisman.

The government also suggests that Mr. Chrisman had no expectation of privacy as he utilized the
governmental medical examiner.  However, that analysis is off the mark.  Regardless of who the medical
examiner is, a patient has an uninhibited expectation of privacy in their medical records related to their
communications with their mental health provider.  *Jaffee v. Redmon*, 518, U.S. 1, 15 (1996) (holding
that confidential communications between licensed psychotherapists and her patients in the course of
diagnosis or treatment are protected from disclosure); *see also Weiland v. City of Concord,* Case No. 13-
cv-5570-JSC, 2014 WL 5358756 at *3 (N.D. Cal. Oct. 20, 2014) (finding that "communications are
protected by the psychotherapist-patient privilege regardless of whether the mental health provider may
have been Plaintiff's primary care physician rather than a psychotherapist."); *Finley v. Johnson Oil Co.*,
199 F.R.D. 301, 304 (S.D. Ind. 2001) (finding that general practitioners at health clinics fall within the
federal common law psychotherapist-patient privilege).  Further, the psychotherapist-patient privilege
has been found to exist even where a psychologist disclosed to an employer's boss whether that

---

[3] https://www.faa.gov/pilots/medical/
[4]
https://www.faa.gov/about/office_org/headquarters_offices/avs/offices/aam/ame/guide/app_process/general/privacy/

employee was fit to return to duty.  *See Caver v. City of Trenton*, 192 F.R.D. 154, 162 (D.N.J. 2000) (holding that a psychotherapist-patient privilege existed even where the psychologist disclosed to the police chief a "yes" or "no" response as to whether the officer was fit to return to duty).  Similar to *Caver*, here the AME, Dr. Brath, noted on the FAA 8500-8 Forms that Mr. Chrisman had been issued a medical certificate.  Dr. Brath did not disclose any further information of the underlying examination or findings.  Instead, it was the equivalent of "merely opin[ing]" whether Mr. Chrisman was fit to continue flying.  *See Williams v. District of Columbia*, No. Civ. A. 96-0200-LFO, 1997 WL 224921, at *2 (D.D.C. Apr. 25, 1997); *see also Caver,* 192 F.R.D. at 162.  Because no expectation of privacy was waived, and Mr. Chrisman's communications and evaluation with Dr. Brath falls under the psychotherapist-patient privilege, the government agents violated the Fourth Amendment and the right to privacy provided by Form 8500 when it interviewed and obtained information of Chrisman's medical history without his written consent. As such, all information obtained should be excluded.

### 5.   Dr. Brath and Dr. Bussey Could not Voluntarily Consent on Mr. Chrisman's Behalf

Here, the government may seek to argue that Dr. Brath and Dr. Bussey voluntarily consented to the disclosure of Mr. Chrisman's medical and mental health information and records.  Alternatively, the government may argue that Dr. Brath and Dr. Bussey voluntarily consented to the release of Mr. Chrisman's medical and mental health information and records on Mr. Chrisman's behalf.  Any such arguments by the government, however, are without bases and should be rejected by the Court.

It is Mr. Chrisman's consent that was needed, not those of his doctors.  "The government bears the burden of proving that consent was voluntary."  *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009) (citation omitted).  *See Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).  The Ninth Circuit evaluates the totality of circumstances to determine whether the consent was voluntary or was the product of express or implied coercion.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) ("the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.") "[I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it was coerced by threats or force, or granted only in submission to a claim of lawful authority—then we have

found the consent invalid and the search unreasonable." *Schneckloth v. Bustamonte*, 412 U.S. 218, 233 (1973). "Coercion is implicit in situations where consent is obtained under the color of a badge." *United States v. Page*, 302 F.2d 81, 84 (9th Cir. 1962).

Here, the agents arrived at Dr. Brath's medical office, identified themselves, and explained the nature of their interview.  The agents did not disclose the fact that Mr. Chrisman had not consented to the disclosure of his medical information.  Instead, the agents, "under the color of a badge" coerced the testimony of Dr. Brath.  Dr. Brath was not apprised of his ability to not consent to an interview.  Further, even if Dr. Brath did consent to an interview, Dr. Brath could not waive the psychotherapist-patient privilege as it was not his privilege to waive.  *Jaffee v. Redmon*, 518, U.S. 1, 15 (1996) (holding that confidential communications between licensed psychotherapists and her patients in the course of diagnosis or treatment are protected from disclosure).

Communications and facts related to Mr. Chrisman's treatment under Dr. Brath are protected under the general umbrella of HIPAA and the psychotherapist-patient privilege.  Moreover, Mr. Chrisman did not consent to the disclosure of his medical and mental health information and records, including but not limited to his communications with Dr. Brath, Dr. Rozansky, and his other medical providers.

a.     **The Crime-Fraud Exception does not Apply to Communications with Mr. Chrisman's Doctors**

The government has indicated that may seek to rely upon the crime-fraud exception to obtain access to Mr. Chrisman's communications with his treating doctors.  In particular, the government suggests that Dr. Brath must turn over a letter drafted on behalf of Mr. Chrisman based on the crime-fraud exception.  However, the government's reasoning misinterprets the purpose of the crime-fraud exception.

First, should the government has the burden of proving the application of the doctrine.  If it wishs to invoke the crime-fraud exception, it must make a prima facie showing that the exception applies.  *See In re Grand Jury Proceedings*, 87 F.3d 377, 381 (1996) (holding the court must find "reasonable cause to believe that the attorney's services were utilized… in furtherance of the ongoing unlawful scheme.") (internal quotations omitted).

Second, the crime-fraud exception applies to communications conducted "in furtherance of **an intended or present illegality**." *In re Icenhower*, 755 F.3d 1130, 1141 (9th Cir. 2014) (emphasis added).[5] "[C]ommunications concerning past or completed crimes do not come within the crime-fraud exception[.]" *In re Grand Jury Subpoena 92-1(SJ)*, 31 F. 3d 826, 831 (9th Cir. 1994). Thus, crime-fraud exception only applies towards present or future crimes, not past illegalities. *See In re Grand Jury Proceedings*, 87 F.3d 377, 381 (1996) ("To trigger the crime-fraud exception, the government must establish that 'the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme.")

Even assuming *arguendo* that a crime occurred, the crime-fraud exception does not apply to past crimes. "[T]he crime-fraud exception will apply only when the patient's purpose is to promote a particular crime or fraud.… [A] career criminal's confessions to his psychotherapist will not fall within the exception even though the therapy may generally increase the patient's professional productivity." *In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 77 (1st Cir. 1999). Thus, to invoke the crime-fraud exception, the government must show that Mr. Chrisman communicated with Dr. Brath with the intent to plan a criminal or fraudulent scheme or to further such a scheme. However, Mr. Chrisman's communications with Dr. Brath were solely for the evaluation of his physical and mental medical conditions. Mr. Chrisman's communications with Dr. Brath relating to his past PTSD diagnosis were not for the purpose of furthering a crime or fraud, but rather to resolve and correct the errors of his FAA forms. Because Mr. Chrisman's communications with Dr. Brath were not for the purpose of furthering an unlawful scheme, the crime-fraud exception does not apply.

## V.   **CONCLUSION**

First, Mr. Chrisman brings this motion to suppress all statements he has ever made to the FAA through the AME examination process, including all Form 8500 forms and all discussions with all doctors because these statements are immunized statements pursuant to the principles of *Garrity*.

---

[5] The policy considerations underlying the psychotherapist-patient privilege parallel those underlying the attorney-client privilege. As such, courts look to case law interpreting the crime-fraud exception under the attorney-client as guidance for its use under the psychotherapist-patient privilege context. *See In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 76 (1st Cir. 1999) (finding the "attorney-client privilege and the psychotherapist-patient privilege both exist to foster the confidence and trust required for effective counseling relationships…. This sense of parity carries over to the crime-fraud exception.").

DEFENDANT GREGORY J. CHRISMAN'S MOTION TO SUPPRESS EVIDENCE
-20-
Case No. 3:18 CR 390 VC

Specifically, this Court should suppress Mr. Chrisman's statements to the FAA, through the AME examination process / Form 8500 process, as the introduction of such statements and Form 8500s would be in violation of the principles of *Garrity v. New Jersey*, 385 U.S. 493 (1967) because such records and statements are immunized.  Second, this Court should suppress all statements and information from government agent interviews of Dr. Brath and Dr. Bussey because those interviews violated Mr. Chrisman's right to privacy regarding his medical information by interviewing his doctors who had possession of private medical and mental health information obtained from Mr. Chrisman and a treating psychotherapist.

**LAW OFFICES OF JONATHAN D. McDOUGALL**
Jonathan D. McDougall

DATED:  September 18, 2019

**FOLEY & LARDNER LLP**
Pamela L. Johnston

By:  */s/ Pamela L. Johnston* _____
  PAMELA L. JOHNSTON
  Attorneys for Defendant GREGORY
  JAMES CHRISMAN