# EXHIBIT 2

**EXHIBIT 2**

United States Department of Transportation - Office of Inspector General

# Memorandum of Activity

| Case Number:<br>I18A0170900 | Reporting Office:<br>JRI-9 San Francisco | Type of Activity:<br>Interview |
|---|---|---|
| Date of Activity:<br>06/25/2018 | Date Report Drafted:<br>06/28/2018 | Location of Activity:<br>31 Panoramic Way Suite 201 |
| Subject of Activity:<br>BUSSEY, STUART | Activity Conducted By (Name(s)):<br>Reggie Lee | Signature:<br>R L |

On June 25, 2018, Doctor Stuart Bussey (Bussey) was interviewed by SAs Reggie Lee and Brian DuBois, U.S. Department of Transportation-Office of Inspector General (USDOT-OIG) The interview took place at his office, 31 Panoramic Way, Suite 201, Walnut Creek, CA. The purpose of the interview was to verify Gregory Chrisman (Chrisman)'s response to FAA Form 8500-8 and determine if Bussey would have treated Chrisman differently with the correct information. After the agents identified themselves and apprised Bussey of the purpose of the interview, Bussey provided the following:

Bussey has been a physician since 1978 and conducting FAA medical examinations for over 30 years. On average, Bussey estimated he conducted 100 FAA medical examinations per month. Bussey, who is also a pilot himself, was very familiar with the FAA medical examinations. He explained the FAA medical examinations process as follows:

The pilot initiates the application online via FAA MedXpress. Once the application is completed, the pilot will schedule an appointment with an Aviation Medical Examiner (AME). The pilot provides the application confirmation number to the AME so that the AME can access the application. During this time, the AME has the ability to review the pilot's previous medical examinations as well. However, the pilot does not have access to their previous applications unless they retained a hard copy. Bussey stated that unless the pilot indicates "yes," to a particular question or a medical condition, he will not ask for clarification because it was presumed the pilot was being honest. Once Bussey completed his portion, the application was routed to the FAA for their approval. If further examinations were required, Bussey deferred the application to the FAA for further evaluation.

When Bussey was presented with Chrisman's FAA Form 8500-8, dated Dec 12, 2017, Bussey instantly recognized the pilot. Chrisman had been examined hours earlier that day and passed the medical examination. Bussey stated Chrisman appeared chippy and pretty normal, and that he had been off alcohol for few years now. SA Lee explained the VA medical disability benefit to Bussey, and provided a summary of Chrisman's medical disability from the VA. Specifically that, VA rated Chrisman with a service connected disability of 50% for Post-Traumatic Stress Disorder (PTSD) after Chrisman reported "feelings of survivor guilt, intrusive thoughts about combat operations in Southwest Asia, poor sleep, sadness and depression, and problems with anger and irritability." Upon hearing the information, Bussey replied that the medical condition for PTSD would have been an automatic deferral to the FAA. He further stated he would've never known Chrisman was diagnosed with PTSD since Chrisman did not indicate so on the FAA Form 8500-8.

Bussey explained that a deferral to the FAA was not an automatic rejection. Rather it allowed the FAA to review the pilot's medical records and request additional evaluation if necessary. The FAA would authorize a special issuance of a medical certification after the FAA deemed the pilot safe to fly.

Bussey stated that he would contact the FAA to withdraw his approval and notify them about the information he learned. He believed the FAA would still allow Chrisman to fly for the time being, but would require Chrisman to produce supporting documents to the FAA within 90 days.

This report is the property of the Office of Inspector General, and is For Official Use Only. It contains sensitive law enforcement information, the use and dissemination of which is subject to the Privacy Act, 5 U.S.C. § 552a. This information may not be copied or disseminated without the written permission of the OIG, which will be granted only in accordance with the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552. Any unauthorized or unofficial use or dissemination of this information will be penalized.

USGJC000754

(Agent's Note:  Interviewing agents requested that Bussey not disclose their meeting to Chrisman.)

Reviewed By (Initials): L G     Date: 07/03/2018

This report is the property of the Office of Inspector General, and is For Official Use Only. It contains sensitive law enforcement information, the use and dissemination of which is subject to the Privacy Act, 5 U.S.C. § 552a. This information may not be copied or disseminated without the written permission of the OIG, which will be granted only in accordance with the Privacy Act and the Freedom of Information Act, 5 U.S.C. § 552. Any unauthorized or unofficial use or dissemination of this information will be penalized.