DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ALEX G. TSE (CABN 152348)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6855
FAX: (415) 436-7234
Alex.Tse@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY JAMES CHRISMAN,<br><br>Defendant. | NO. 18-CR-00390 VC<br><br>**UNITED STATES'S OPPOSITION TO MOTION TO SUPPRESS**<br><br>Hearing: October 8, 2019<br>Time: 10:30 a.m. |

TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

A. The delegation of authority from the FAA Administrator to the aviation medical examiner (AME) and the FAA's medical certificate requirement. ..... 1

B. The Airman's Medical History and the FAA Form 8500-8, Application for Airman Medical Certificate. ..... 3

C. Criminal exposure arising out of false applications and medical certificates. ..... 3

D. The release and use of medical information in the FAA Form 8500-8. ..... 4

E. Chrisman submits multiple Form 8500-8s and is examined by AMEs each year from at least 2011 to 2018. ..... 5

F. The alleged false statements in Chrisman's FAA Form 8500-8.. ..... 5

III. ARGUMENT ..... 7

A. Statements Made By Chrisman in his Form 8500-8 and to the AME as part of the Medical Certification Are Not Compelled Statements under Garrity v. New Jersey and Do Not Violate the Fifth Amendment. ..... 7

B. Chrisman's statements were not obtained in violation of HIPAA, or any other law, and those statements should not be suppressed under the Fourth Amendment. ..... 9

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## Federal Cases

Aguilera v. Baca, 510 F.3d 1161 (9th Cir. 2007) cert. denied, 555 U.S. 993 (2008) .............................. 7

Baltimore City Dept. of Social Services v. Bouknight, 493 U.S. 549 (1990) .......................................... 8

California v. Byers, 402 U.S. 424 (1971) ................................................................................. 8, 9

Davis v. United States, 328 U.S. 582 (1946) ................................................................................. 8

Garrity v. New Jersey, 385 U.S. 493 (1967)................................................................... 7, passim

Lefkowitz v. Turley, 414 U.S. 70 (1973)........................................................................................ 8

Shapiro v. United States, 335 U.S. 1 (1948) .................................................................................. 8

United States v. Apfelbaum, 445 U.S. 115 (1990) ......................................................... passim

United States v. Cook, 526 F.Supp.2d 1 (D.D.C. 2007), a'ffd, 330 Fed.Appx. 1 (2009) .......................... 8

United States v. Frazin, 780 F.2d 1461 (9th Cir. 2006), cert. denied, 479 U.S. 844 (1986) .................... 12

United States v. Streich, 560 F.3d 926 (9th Cir. 2008), cert. denied, 558 U.S. 920 (2009) ..................... 11

United States v. Veal,153 F.3d 1233 (11th Cir. 1998), cert. denied, 526 U.S. 1147 (1999)..................... 9

Webb v. Smart Document Solutions, LLC, 499 F.3d 1078 (9th Cir. 2007) .......................................... 11

## Other Federal Cases

Elder-Evins v. Casey, 2012 U.S.Dist. LEXIS 92467 (N.D. CA 2012)…………………………………..12

## Federal Statutes

42 U.S.C. § 1320d-5(a)(1) ................................................................................................ 12

18 U.S.C. § 1001 ........................................................................................................... 4, 8

## Federal Regulations

14 C.F.R. § 67 .................................................................................................................. 10

14 C.F.R. § 183.21 ........................................................................................................... 10

45 C.F.R. § 164.103 .......................................................................................................... 11

45 C.F.R. § 164.501 .......... 10

45 C.F.R. § 164.512(d) .......... 10

45 C.F.R. § 164.512(d)(iii) .......... 10

## I. INTRODUCTION

Defendant Gregory Chrisman made false statements in connection with his application to obtain an FAA medical certificates, which is required by law in order to safely operate an aircraft. It is an undisputed fact that the medical certification process is a necessary part of a federal regulatory scheme governed by the FAA. The information provided by the applicant pilot – here the defendant -- to the FAA or the FAA's contract examiner is the subject of this instant motion to suppress. Defendant moves to suppress this information, even though the information regarding his medical history he provided to the FAA was undisputedly false.

Chrisman moves to suppress under the Fourth and Fifth Amendments, and both of these arguments are completely without merit. One, the information he seeks to suppress is not protected under Garrity v. New Jersey, and as a matter of law he cannot rely on the privilege against compelled self-incrimination under the Fifth Amendment in order to justify the suppression of his false statements. United States v. Apfelbaum, 445 U.S. 115, 127 (1990). And, two, there is no Fourth Amendment violation because Chrisman waived any right of privacy in connection with his FAA application, and as a matter of law he cannot prove a violation under HIPAA. Moreover, there exists no suppression remedy under HIPAA.

As a matter of law, Defendant has failed to demonstrate any Constitutional justification for the suppression of evidence. He also has made no showing for an evidentiary hearing and this motion may be decided without further testimony or evidence.

## II. STATEMENT OF FACTS

### A. The delegation of authority from the FAA Administrator to the aviation medical examiner (AME) and the FAA's medical certificate requirement.

Pilots seeking FAA authority to fly must obtain two occupational certificates: (1) an airman certificate, which demonstrates the airman has the ability to operate a plane or other aircraft; and (2) an airman medical certificate, which demonstrates that the airman meets the FAA's airman medical standards. Declaration of Susan E. Northrup, M.D., M.P.H., in Support of the United States's Opposition to Motion to Suppress (hereinafter referred to as the "Northrup Decl."), filed concurrently herewith, at ¶ 3.

The airman medical certification requirement was established by the FAA to allow pilots to fly without accepting undue risk to the safety of pilots, passengers, or others. Id., at ¶ 4. Medical standards and the medical certification process were developed to reduce the risk of an aircraft accident or incident by identifying pilot applicants with medical and/or mental conditions that could potentially impair or incapacitate, among other things, the pilot in flight or during critical take-off and landing periods. Id.

Title 49, of the United States Code (Transportation), § § 109(9), 40113(a), 44701-44703, and 44709 (1994) formerly codified in the Federal Aviation Act of 1958, as amended, authorizes the FAA Administrator to delegate to qualified private persons, i.e., designated examiners, matters related to the examination, testing, and inspection necessary to issue a certificate under the United States Code and to issue the certificate. Designated examiners are delegated the Administrator's authority to examine applicants for airman medical certificates and to issue or deny issuance of certificates. These examiners are also referred to as Aviation Medical Examiners (AMEs). Declaration of Alex G. Tse in Support of the United States's Opposition to Motion to Suppress (hereinafter referred to as the "Tse Decl."), filed concurrently herewith, at ¶ 2, Exhibit 1, p.6.

Approximately 450,000 applications for airman medical certification are received and processed each year. The vast majority of medical examinations conducted in connection with these applications are performed by physicians in private practice who have been designated to represent the FAA for this purpose. Id. The AME is delegated authority to:

> (1) Examine applicants for, and holders of, airman medical certificates to determine whether or not they meet the medical standards for the issuance of an airman medical certificate.
>
> (2) Issue, defer, or deny airman medical certificates to applicants or holders of such certificates based upon whether or not they meet the applicable medical standards. The medical standards are found in Title 14 of the Code of Federal Regulations, part 67.

Id. at Tse Decl., Exhibit 1, p.7.

AMEs may issue a medical certificate only if the applicant meets all medical standards, including those pertaining to medical history unless otherwise authorized by the FAA. Id. at Tse Decl., Exhibit 1, p.9. The AME always may defer the application to the FAA for action. Id. at p.10. In the interests of the applicant and of a responsive certification system, however, deferral is appropriate only if: the standards are not met; if there is an unresolved question about the history, the findings, the

standards, or agency policy; if the examination is incomplete; if further evaluation is necessary; or if directed by the FAA. Id. The AME may deny certification only when the applicant clearly does not meet the standards. Id.

**B. The Airman's Medical History and the FAA Form 8500-8, Application for Airman Medical Certificate.**

Applicants for an airman medical certificate commence the medical certification process by completing a FAA Form 8500-8, Application for Airman Medical Certificate or Airman Medical & Student Pilot Certificate (medical application form) in MedXPress, which is an online web-based application system. Northrup Decl., ¶ 5.

Once the applicant has entered his or her information into MedXPress, the applicant makes an appointment with an AME. The AME reviews the medical information and medical history that the applicant has entered through MedXPress. Although it is not prohibited, the AME is not the airman's physician, and the AME does not have a doctor-patient relationship with the airman during this certification process. Northrup Decl., ¶ 5.

After the applicant completes the medical history of the Form 8500-8, and prior to the AME performing an examination, the AME must review the airman's prior history, demographics, medications, and previous medical visits. Northrup Decl., ¶¶ 7-11; Tse Decl., ¶ 1, at p.27. An applicant cannot make updates to their application once they have certified and submitted it. Ibid. If the AME discovers the need for corrections to the application during the review, the AME is required to discuss these changes with the applicant and obtain their approval. Ibid. Of particular note, "[s]trict compliance with this procedure is essential in case it becomes necessary for the FAA to take legal action for falsification of the application." Tse Decl., ¶ 2, Exhibit 1 at p.27.

**C. Criminal exposure arising out of false applications and medical certificates.**

The consequences of a false certification, which would permit an unqualified person to take the controls of an aircraft, can be serious for the public, for the Government, and for the AME. Tse Decl., ¶ 2, Exhibit 1 at p.6. If the examination is cursory and the AME fails to find a disqualifying defect that should have been discovered in the course of a thorough and careful examination, a safety hazard may be created and the AME may bear the responsibility for the results of such action. Id.

Of equal concern is the situation in which an AME deliberately fails to report a disqualifying condition either observed in the course of the examination or otherwise known to exist. In this situation, both the applicant and the AME in completing the application and medical report form may be found to have committed a violation of Federal criminal law, which provides that:

> "Whoever in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or who makes any false, fictitious or fraudulent statements or representations, or entry, may be fined up to $250,000imprisoned not more than 5 years, or both" (Title 18 U.S. Code. Secs. 1001; 3571).

Northrup Decl., Exhibit 1, p.8.

Cases of falsification involving the applicant or AME may be subject to criminal prosecution by the Department of Justice. Id.

**D. The release and use of medical information in the FAA Form 8500-8.**

Within the FAA, access to an individual's medical information is strictly on a "need-to-know" basis. Tse Decl., ¶ 2, Exhibit 1 at p.14. “Except in compliance with a court order of competent jurisdiction, or upon an applicant's written request, AMEs will not divulge or release copies of any reports prepared in connection with the examination to anyone other than the applicant or the FAA.” Id. (emphasis added)

When the applicant completes the FAA Form 8500-8, he or she acknowledges a Statement of Privacy. Northrup Decl., ¶ 6, Exhibit 1 at pp. 2-6. The applicant consents that “the purpose of the information is to determine whether you meet Federal Aviation Administration (FAA) medical requirements to hold a medical certificate or medical clearance.” Id. Moreover, the information in the Form 8500-8 “becomes part of the FAA Privacy Act system of record, DPT/FAA-847, General Air Transportation Records on Individuals.” Id.

The applicant acknowledges that these records and information in these records may be used “(e) to disclose information to another Federal agency, or to a court or administrative tribunal, when the Government or one of its agencies is a party to a judicial proceeding before the court or involved in administrative proceedings before the tribunal; and (f) to disclose information to other Federal agencies for verification of the accuracy or completeness of the information;”. Id.

**E. Chrisman submits multiple Form 8500-8s and is examined by AMEs each year from at least 2011 to 2018.**

At issue in this case are Form 8500-8s submitted to FAA AMEs and the FAA on December 10, 2017, and June 24, 2018. See Indictment, Dkt. 1. In connection with each of these forms, and the accompanying information submitted in MedXPress, Chrisman provided certain information under penalty of perjury regarding his medical history as required by Federal regulations. Id.

After submission of both Form 8500s, Chrisman met with FAA AME Dr. William Brath. Based on the information on the Form 8500 that was reviewed by Dr. Brath, and the examination, Dr. Brath approved the medical certificate.

Dr. Brath has served as an AME since 1977. In 2015, he received the currently-operative letter providing the formal authority to act as an AME, referred to as the "AME Certificate and Letter of Authority," or "CLOA." Northrup Decl., ¶ 8, Exhibit 3. Dr. Brath's CLOA indicates that Dr. Brath, as with all AMEs, acts on behalf of the FAA, stating: "You are permitted to perform activities on behalf of the Federal Aviation Administration (FAA) in accordance with the authorizations defined on this Certificate Letter of Authority (CLOA)." Id. The FAA manages and supervises Dr. Brath's activities in connection with the appointment. Id.

**F. The alleged false statements in Chrisman's FAA Form 8500.**

The applicant executes the FAA Form 8500-8 and certifies that his statements are true. See Northrup Decl., ¶ 5, Exhibit 1, p.1. The Form 8500-8 requires a pilot to disclose details regarding his medical history. Item 18 on the form lists a series of specific medical conditions and asks the applicant

17.b. Do You Ever Use Near Vision Contact Lens(es) While Flying? ☐ Yes [X] No

**18. Medical History -** HAVE YOU EVER IN YOUR LIFE BEEN DIAGNOSED WITH, HAD, OR DO YOU PRESENTLY HAVE ANY OF THE FOLLOWING? Answer "yes" or "no" for every condition listed below. In the EXPLANATIONS box below, you may note "PREVIOUSLY REPORTED, NO CHANGE" only if the explanation of the condition was reported on a previous application for an airman medical certificate and there has been no change in your condition. **See Instructions Page**

| Yes | No | Condition | Yes | No | Condition | Yes | No | Condition | Yes | No | Condition |
|---|---|---|---|---|---|---|---|---|---|---|---|
| a. ☐ | X | Frequent or severe headaches | g. ☐ | X | Heart or vascular trouble | m. ☐ | X | Mental disorders of any sort; depression, anxiety, etc. | r. ☐ | X | Military medical discharge |
| b. ☐ | X | Dizziness or fainting spell | h. ☐ | X | High or low blood pressure | n. ☐ | X | Substance dependence or failed a drug test ever; or substance abuse or use of illegal substance in the last 2 years. | s. ☐ | X | Medical rejection by military service |
| c. ☐ | X | Unconsciousness for any reason | i. ☐ | X | Stomach, liver, or intestinal trouble | | | | t. ☐ | X | Rejection for life or health insurance |
| d. ☐ | X | Eye or vision trouble except glasses | j. ☐ | X | Kidney stone or blood in urine | o. ☐ | X | Alcohol dependence or abuse | u. ☐ | X | Admission to hospital |
| e. ☐ | X | Hay fever or allergy | k. ☐ | X | Diabetes | p. ☐ | X | Suicide attempt | x. ☐ | X | Other illness, disability, or surgery |
| f. ☐ | X | Asthma or lung disease | l. ☐ | X | Neurological disorders; epilepsy, seizures, stroke, paralysis, etc. | q. ☐ | X | Motion sickness requiring medication | y. ☐ | X | Medical disability benefits |

**Arrest, Conviction, and/or Administrative Action History --- See Instructions Page**

whether he has "ever in your life been diagnosed with" any of the conditions enumerated in the question. The form also asks whether pilots receive medical disability benefits (Item 18y).

Chrisman applied for medical disability benefits through the Department of Veterans Affairs (VA). See Indictment. Following this diagnosis by the VA, it is undisputed that Chrisman began receiving VA medical benefits but did not disclose receipt of those benefits on his Form 8500-8. Neither did Chrisman disclose on the Form 8500 (Item 18m) the VA's diagnosis of PTSD for his Rating Decision in 2011. Prior to the instant criminal indictment, Chrisman answered "no" to both Items 18m and 18y in his Form 8500-8.

In December 2018, Chrisman admitted to receiving VA Disability benefits since October 2011. See Johnston Decl., ¶ 3, filed on September 18, 2019, Exhibit 3, Letter from Chrisman to the FAA's Office of Aerospace Medicine in Oklahoma City, OK, received on December 10, 2018. Chrisman went on to admit in his letter that, "I should have reported it during my December 2011 physical, but neglected to. I realized my error a physical or so later. I should have corrected it, but frankly, allowed myself to let fear overtake me, and did not." Id.

Item 18m on the Form 8500-8 deals with "mental disorders of any sort." The applicant must disclose any and all diagnoses the airman has ever had in his lifetime. Northrup Decl., at ¶ 18. Many mental health conditions are associated with disturbances of attention, invasive thoughts, inability to interact effectively with the environment, and judgement impairment. Id. Depressed and/or psychotic individuals have committed suicide by aircraft, sometimes taking others with them either on the ground or in the plane. Id. Other conditions such as ADD/ADHD and personality disorders are associated with impulsivity and judgement issues not commensurate with flight activities. Id. PTSD can be associated with invasive thoughts, triggers that elicit physiologic reactions with no warning, and depression. Id. Aviation requires an exceptional attention to detail for safety. Id.

Item 18y on the Form 8500-8 requires a disclosure of medical disability benefits. Northrup Decl., ¶ 18. Medical disabilities are granted for many diagnoses that negatively impact the safety of the National Aerospace System. Id. They range from orthopedic to hearing loss to loss of limbs or eyesight to mental health. Id. Many can cause sudden or subtle incapacitation unacceptable in aviation. While many individuals with disabilities can safely return to flight, each one must be reviewed and evaluated to ensure fitness. Id.

## III. ARGUMENT

### A. Statements Made By Chrisman in his Form 8500-8 and to the AME as part of the Medical Certification Are Not Compelled Statements under Garrity v. New Jersey and Do Not Violate the Fifth Amendment.

Defendant Chrisman has moved to suppress "all statements he has ever made to the FAA through the Aviation Medical Examiner ("AME") examination process, including all Form 8500 forms and all discussions with all doctors." Motion to Suppress at p. 7. With little explanation and no legal support, the defendant asks the Court for a broad expansion of the principles of Garrity v. New Jersey 385 U.S. 493 (1967). Both the language and reasoning of that opinion rely on the premise that a statement be coerced from a public employee, under threat of choosing between self-incrimination or termination of employment. The defendant cites no cases extending this principle to anyone other than government employees or contractors subject to coerced interrogation in connection with an investigation. The situation here does not involve public employment, and instead involves a routine form and medical examination for licensing purposes; this case is far afield from the principles of Garrity, and for the reasons below those principles are inapplicable and the motion to suppress should be denied.

The requirement to complete a Form 8500-8 and provide truthful medical information in order to receive a commercial pilot's license is not a compelled statement entitled to protection under the Fifth Amendment. Garrity held that incriminating statements obtained from public employees coerced to make the statements under a threat of discharge cannot be used in a subsequent criminal proceeding. Garrity, 385 U.S. at 500. Coercion, and the compelling of a public employee to waive the right against self-incrimination are key to the reasoning of Garrity. In the Ninth Circuit, application of Garrity requires that the public employee be both compelled to answer incriminating questions and compelled to waive immunity from the use of those answers. Aguilera v. Baca, 510 F.3d 1161, 1171 (9th Cir. 2007), cert. denied 555 U.S. 993 (2008). Requiring the truthful answer to medical questions in order to be evaluated for medical clearance to fly a plane is not the level of coercion contemplated by Garrity, and the application of the holding in Garrity to the facts in this case should be rejected.

Likewise, the collection of information on the form and by the AMEs is to allow the FAA to perform a statutorily authorized regulatory function. The United States Supreme Court has long held

that the Fifth Amendment privilege against self-incrimination does not apply to records that are required to be kept pursuant to a valid regulatory scheme. Shapiro v. United States, 335 U.S. 1, 17-18 (1948) quoting Davis v. United States, 328 U.S. 582, 589-90 (1946) (no constitutional privilege for "records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established"). Moreover, the Supreme Court has stated that "the Fifth Amendment privilege may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws." Baltimore City Dept. of Social Services v. Bouknight, 493 U.S. 549, 556, (1990) ("the keeping of records which may be inspected by an administrative agency and may be used in prosecuting statutory violations committed by the record-keeper himself"); and see California v. Byers, 402 U.S. 424, 432 (1971) ("the statutory purpose is noncriminal and self-reporting is indispensable to its fulfillment").

Moreoever, in this case the completion of the Form 8500-8 and an AME examination does not constitute a "proceeding" or "investigation" that implicates the Fifth Amendment right against self-incrimination. See Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) (The Fifth Amendment privileges questions "in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.") The "presumption underlying Garrity and its progeny is that the subject employee is under investigation at the time the challenged statement is made." United States v. Cook, 526 F.Supp.2d 1, 8 (D.D.C. 2007) aff'd, 330 Fed.Appx. 1 (2009). The statements submitted in the Form 8500-8 and to the AME are required by Federal regulation in furtherance of a regulatory scheme that governs obtaining a medical certificate and ultimately a FAA license to operate an aircraft. The purpose of this regulatory scheme is unrelated to the enforcement of criminal laws, although the failure to provide truthful information may form the predicate facts for a criminal prosecution (i.e., a Title 18 U.S.C. § 1001 violation) as is the case here.

The reporting of accurate information on the Form 8500-8 and to the AME is indispensable to ensuring the safety of the flying public. The medical certification process is a regulatory scheme meant to, among other things, address the consequences of granting an unqualified applicant who has access to operate an airplane. The disclosure of the applicant's medical information cannot be considered to be a

compelled statement because the medical certification requirement is "indispensable" to a valid regulatory scheme designed to protect the public at large, applies uniformly to all pilots, and requires no disclosure of inherently illegal activity. See Byers, 402 U.S. at 432.

Furthermore, the privilege against compelled self-incrimination cannot justify the suppression of false statements and evidence of perjury. United States v. Apfelbaum, 445 U.S. 115, 127 (1990) ("the Fifth Amendment privilege against compulsory self-incrimination provides no protection for the commission of perjury"). Specifically, the defendant "'may not abuse Garrity by committing a crime involving false statements, or obstruction of justice.'" See Cook, 626 F.Supp.2d at 8, quoting United States v. Veal, 153 F.3d 1233, 1243 (11th Cir. 1998), cert. denied, 526 U.S. 1147, 119 S.Ct. 2024, 143 L.Ed.2d 1035 (1999). The touchstone of the Garrity analysis is "whether the defendant's statements were coerced and therefore involuntary." Cook, 626 F.Supp.2d at 8. Prior to being charged with the instant crime, Chrisman was not coerced to respond to the questions in the Form 8500-8 or in response to any questions by the AME. Instead, he is now asserting Garrity to avoid a criminal prosecution for making false statements under oath.

Chrisman's argument, if successful, would mean that pilots (and likely many other private individuals who submit information to federal or state governments) would be immune from criminal prosecution for false statements made in the process of obtaining a license or government benefit. There is no case law or Constitutional principle supporting such a blanket immunity. Accordingly, Chrisman is not entitled to any protection under the Fifth Amendment, and his motion to suppress on this ground should be denied.

**B. Chrisman's statements were not obtained in violation of HIPAA, or any other law, and those statements should not be suppressed under the Fourth Amendment.**

The defendant next argues that all information obtained by the two AMEs who performed FAA-mandated examinations cannot be disclosed to federal agents without violating the Fourth Amendment, because such disclosure is a "search" without a warrant or consent. This argument fails for a number of reasons, but most fundamentally, the information collected on the Form 8500-8 and during examinations conducted by FAA-contracted AMEs belongs to the FAA. Northrup Decl., ¶ 7. The defendant has no expectation of privacy in this information. Id. at ¶¶ 5, 7. There may be legal and professional ethical

limitations on the use and disclosure of Chrisman's medical and health information, but those limitations do not create a Fourth Amendment expectation of privacy sufficient to preclude the lawful use of the information obtained by the FAA in the course of issuing medical certificates to pilots.

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), applies to AME disclosures of airmen information to the FAA, and such disclosure is permitted when the "information sought is relevant and material to a legitimate law enforcement inquiry." 45 C.F.R. § 164.512(f)(1)(C)(*1*). Moreover, disclosure is permitted under HIPAA if the information relates to "[g]overnment regulatory programs for which health information is necessary for determining compliance with program standards." 45 C.F.R. § 164.512(d)(iii). Specifically, "a covered entity may disclose protected health information to a health oversight agency for oversight activities authorized by law, including audits; civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or action;" 45 C.F.R. § 164.512(d).

Under HIPAA, a "health oversight agency" is "an agency of the United States . . . or a person or entity acting under a grant of authority . . . including the employees or agents of such public agency or its contractors or persons . . . to whom it has granted authority, that is authorized by law to oversee the health care system or government programs in which health information is necessary to determine eligibility or compliance . . . ." 45 C.F.R. § 164.501. Here, the FAA and AME may disclose health information to the FAA, Department of Transportation Office of Inspector General (DOT OIG), and the Justice Department.

An airman must comply with medical standards promulgated by the FAA to receive and remain eligible for an airman medical certificate. 14 C.F.R. § 67 et seq. An airman's compliance with these medical standards is determined by an AME who is required to review medical history supplied by the airman, and conduct physical examinations of airman, thereby learning health information about the airman necessary to comply with the FAA's standards. See 14 C.F.R. § 183.21. Because AMEs oversee the licensure of airmen for medical certificates, AMEs can under HIPAA disclose protected health information to the FAA for the purposes of that licensure. Here, Chrisman's health information provided to the AME can be disclosed to FAA to ensure Chrisman's compliance with FAA's standards necessary to operate an aircraft.

Moreover, Chrisman was on notice and waived any objection to the government's use of this information. He signed the Statement of Privacy on the Form 8500-8 that put him on notice the information in the Form 8500-8 may be disclosed to other Federal agencies when the Government is a party to a court proceeding (i.e., a criminal prosecution), and this information may be disclosed to other Federal agencies for purposes of verifying the accuracy or completely of that information. Northfup Decl., at ¶ 6, Exhibit 1 at pp.2-6. In this case, the statements at issue were disclosed to special agents of the DOT OIG and the prosecution team at the US Attorney's Office to verify accuracy and for the instant criminal prosecution.

Disclosure of an airman's protected health information to the FAA is further permissible under HIPAA's law enforcement exception, which allows for disclosure to a law enforcement officer for law enforcement purposes. Under HIPAA, a law enforcement officer includes an officer or employee of a federal agency who "is empowered by law to: (1) investigate or conduct an official inquiry into a potential violation of law; or (2) prosecute or otherwise conduct a criminal, civil or administrative proceeding arising from an alleged violation of law." 45 C.F.R. § 164.103. The DOT OIG agents constitute law enforcement officers under this definition because they analyze whether an airman has lawfully obtained a medical certificate necessary to operate an aircraft. Here, the DOT OIG agents investigated Chrisman's conduct in connection with his medical certificate application to the FAA. Specifically, the government contends Chrisman intentionally made false statements to the FAA through the AME evaluation process for a medical certificate. He allegedly violated criminal laws by submitting a false statement, and therefore HIPAA does not preclude the discovery by DOT OIG of Chrisman's statements and medical information provided in support of his medical certificate application.

Disclosure of Chrisman's health information is necessary to ensure that he is complying with the FAA's regulations. And disclosure of the defendant's medical information to the DOT OIG is also permissible under HIPAA's law enforcement exception. Therefore, Chrisman's statements were lawfully obtained under the Fourth Amendment and his motion to suppress should be denied.[1]

---

[1] There is no authority that any statement by Chrisman should or could be suppressed under HIPAA. Even if the Court held there was a HIPAA violation, suppression is not an appropriate remedy. United States v. Streich, 560 F.3d 926, 936 (9th Cir. 2008) cert. denied, 558 U.S. 920 (2009) (concurring opinion) ("HIPAA does not provide any private right of action, much less a suppression hearing."). See e.g., Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1081 (9th Cir. 2007)("HIPAA itself

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to suppress should be denied in its entirety.

DATED: September 26, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

______________________
ALEX G. TSE
Assistant United States Attorney

---

provides no right of action."); United States v. Frazin, 780 F.2d 1461, 1466 (9th Cir. 2006)("Had Congress intended to authorize a suppression remedy, it surely would have included it among the remedies it expressly authorized."); Elder-Evins v. Casey, 2012 U.S.Dist. LEXIS 92467 *29 (N.D. CA 2012) ("HIPAA's general penalty provision, 42 U.S.C. § 1320d-5(a)(1), does not include a suppression remedy").