LAW OFFICES OF JONATHAN D. MCDOUGALL
JONATHAN D. MCDOUGALL, CA BAR NO. 212359
  JDMESQUIRE@HOTMAIL.COM
1640 LAUREL STREET
SAN CARLOS, CA 94070-5217
TELEPHONE:  650.954.4200
FACSIMILE:   650.954.4205

PAMELA L. JOHNSTON, CA BAR NO. 132558
  PJOHNSTON@FOLEY.COM
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2411
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

Attorneys for Defendant
GREGORY JAMES CHRISMAN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>        vs.<br><br>GREGORY JAMES CHRISMAN,<br><br>                              Defendant. | Case No. 3:18 CR 390 VC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO SUPPRESS EVIDENCE AND COMMUNICATIONS WITH DEFENDANT CHRISMAN'S DOCTORS AND THE FRUITS THEREOF**<br><br>**HEARING DATE**:<br>JUDGE: Hon. Vince Chhabria<br>DATE: October 8, 2019<br>TIME: 10:30 a.m. |

# REPLY

In response to Defendant Gregory Chrisman's ("Defendant" or "Mr. Chrisman") Motion to Suppress ("Motion"), the government filed an Opposition that fails to analyze and consider significant factual aspects of the Motion.  The government's Opposition is most telling for what it fails to address. In particular, the government does not challenge or question the existence of the psychotherapist-patient privilege, and instead tries to rest its laurels on the assertion that even if it has violated a protected privilege, and potentially violated HIPAA, any such violation is not appropriate for a motion to suppress.  The defense disagrees.  Mr. Chrisman has not provided knowing and voluntary consent to have his medical details distributed without limitations, as outlined in Mr. Chrisman's declaration. (Dkt. 33-1, Declaration of Gregory J. Chrisman, ¶¶ 9-13).

The government also fails to understand the policy issues raised by *Garrity* in connection with the factual setting here. Further, the government suggests that Mr. Chrisman has failed to make a showing for an evidentiary hearing, however, in the Government's Opposition, it has relied upon the testimony of Dr. Susan E. Northrup, M.D., M.P.H.  Thus, Mr. Chrisman is entitled to cross-examine Ms. Northrup and the testimony she has provided.

## A.   CHRISMAN'S COMMUNICATIONS WITH DR. BARTH ARE PROTECTED BY THE PSYCHOTHERAPIST-PATIENT PRIVILEGE

In his moving papers, Mr. Chrisman argued that his relationship with Dr. Brath[1]  and his other doctors involved a psychotherapist-patient relationship.  Despite asserting the protective nature created by a psychotherapist-patient privilege to the government, the government offered no response in its Opposition.  Instead, the government does not challenge the fact that the psychotherapist-patient privilege protects Mr. Chrisman's communications with Dr. Brath.[2]  The government's silence is

---

[1] Chrisman had the same relationship with his other treating AMEs, therapists and psychiatrists.  At this time, the United States has not offered any evidence suggesting they have interviewed those individuals as well and plan to utilize their statements at trial.  To the extent the United States does seek to do so, we reserve the right to later brief those similar challenges.

[2] The government makes a one-sentence argument attempting to rebut the existence of any sort of patient relationship. First, this rebuttal does not consider the psychotherapist-patient relationship and accompanying privilege.  Second, the government itself notes that a doctor-patient relationship between an AME and an airman can exist.  Where, as here, there was an ongoing relationship involving Mr. Chrisman utilizing Dr. Brath for years on end, the existence of a doctor-patient relationship is unquestionable.

deafening and the inquiry should end here.  Its lack of response reflects the government's inability to find support to rebut the existence of the relationship and the protections it provides over the disclosure of information without the consent of the patient.

As discussed in *Jaffee*, "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment."  *See Jaffee v. Redmond*, 518 U.S. 1, 9-10 (1996) (finding that the confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence'" to be recognized as a testimonial privilege); *see also Weiland v. City of Concord,* Case No. 13-cv-5570-JSC, 2014 WL 5358756 at *3 (N.D. Cal. Oct. 20, 2014) (finding that "communications are protected by the psychotherapist-patient privilege regardless of whether the mental health provider may have been Plaintiff's primary care physician rather than a psychotherapist.").

A doctor or another professional can be employed with multiple purposes.  One purpose here was the examination.  Another purpose, on these facts, was his treatment through the Human Intervention Motivation Study ("HIMS") process.  HIMS is an occupational substance abuse treatment program, specific to commercial pilots to preserve careers and enhance air safety.[3]  HIMS provides a peer identification and referral system tailored to develop a pilot focused, confidential program.[4] The government does not address this duality.  It instead points at the tiny type at the end of an electronic form for "informed consent."  That is not informed consent.

The defense discussed the HIPAA issues to establish the basic premise that we all have a reasonable expectation in the privacy of our psychiatric, psychological and medical records.  It is the starting place for patients in this country.  It is therefore objectively reasonable that Mr. Chrisman confided in Dr. Brath and had a continuing relationship and expectation of privacy in the disclosure of his medical conditions and mental health conditions to Dr. Brath.  In fact, Dr. Brath was Chrisman's sponsor tasked with oversight of all his medical records while Mr. Chrisman was obtaining the special issuance medical certificate between 2010 and 2016.  (Declaration of Daniel R. Sturm ("Sturm Decl."), ¶ 2, Ex. 1).  Dr. Brath was intimately familiar with Mr. Chrisman's medical condition, his alcohol

---

[3] https://himsprogram.com/Home/About
[4] Dr. Brath acted as Mr. Chrisman's Independent Medical Sponsor, who provided oversight of Mr. Chrisman's continuing care.

dependency and his mental illnesses.  In fact, Dr. Brath continued to receive updates and reports on Mr. Chrisman's monitoring program, and ultimately in April 2016 recommended the termination of the monitoring program based on Dr. Brath's sound judgment of Mr. Chrisman's growth through the program and Dr. Brath's insight on Mr. Chrisman's mental conditions and progress with his alcohol dependency.  Sturm Decl., ¶ 3, Ex. 2; Sturm Decl., ¶ 4, Ex. 3.

Further, Dr. Brath's communications to the FAA on behalf of Mr. Chrisman suggesting release from the special issuance monitoring requirements were not a waiver of this privilege.  *See Caver v. City of Trenton*, 192 F.R.D. 154, 162 (D.N.J. 2000) (holding that a psychotherapist-patient privilege existed even where the psychologist disclosed to the police chief a "yes" or "no" response as to whether the officer was fit to return to duty).  Similar to *Caver*, Dr. Brath did not disclose any further information of the underlying examination or findings.  Instead, it was the equivalent of "merely opin[ing]" whether Mr. Chrisman was fit to continue flying.  *See Williams v. District of Columbia*, No. Civ. A. 96-0200-LFO, 1997 WL 224921, at *2 (D.D.C. Apr. 25, 1997).

Because the psychotherapist-patient privilege protects Mr. Chrisman's communications with Dr. Brath, and Mr. Chrisman did not provide consent for the release of his mental health information, suppression is proper.  Further, the government agents did not obtain a warrant or court order from a court of competent jurisdiction to secure authority to interview Dr. Barth and obtain his medical analysis of Mr. Chrisman.  As such, the agents obtained information in direct violation of the psychotherapist-patient privilege.  Thus, the fruits thereof are properly subject to a motion to suppress evidence.[5]

The analysis should end here, regardless of the outcome on the remaining assertions, the United States' failure to rebut the psychotherapist-patient privilege is insurmountable.  *U.S. v. Hayes*, 227 F.3d 578, 586 (6th Cir. 2000) (affirming motion to suppress on ground of psychotherapist-patient privilege); *See also U.S. v. Chase*, 340 F.3d 978, 989-90 (9th Cir. 2003).  Mr. Chrisman did not knowingly and voluntarily consent.  The government's discussion on this point relies on the tiny type at the end of form; there is no evidence in the record that Mr. Chrisman read and understood that language.  No one

---

[5] To the extent the court is persuaded by the Government's argument that the release of the physical records was appropriate, no such ruling can be found for the statements and testimony obtained by the agents during the memorandum of interview.  A privilege undoubtedly protects Dr. Brath's statements shared with the agents, which were based on his interactions with, and testimony of, Mr. Chrisman.

REPLY ISO DEFENDANT GREGORY J. CHRISMAN'S MOTION TO SUPPRESS EVIDENCE
-3-
Case No. 3:18 CR 390 VC

1  explained it to him.  Without such, the government has not shown that the FAA obtained Mr.

2  Chrisman's knowing and voluntary waiver of his known right to privacy over his psychiatric and

3  medical records in the position of the AMEs such as Dr. Brath.

4        **B.**    *GARRITY* **APPLIES TO INDIVIDUALS BEYOND GOVERNMENT**

5                **EMPLOYEES**

6        In opposition to the Motion, the government argues that Chrisman failed to establish that he

7  provided compelled testimony in response to the Form 8500 questionnaire.  The government suggests

8  that contrary to Chrisman's cited authority, *Garrity* only applies to government employees.  The

9  government is incorrect.

10        *Garrity* provides no room for such an interpretation.  *Garrity* itself states "[w]e now hold the

11  protection of the individual under the Fourteenth Amendment against coerced statements **prohibits use**

12  **in subsequent criminal proceedings of statements obtained under threat of removal from office,**

13  **and that it extends to all**, whether they are policemen or other members of our body politic." *Garrity v.*

14  *New Jersey*, 385 U.S. 493, 500 (1967).  The Supreme Court left no room for doubt when it noted that

15  coerced statements under the threat of removal extends to all citizens.  Despite the government's

16  assertion that *Garrity* is limited to government employees, its findings apply in the broader scope of

17  employment.  To support this assertion Mr. Chrisman cited to *Lefkowitz*. *See Lefkowitz v. Turley*, 414

18  U.S. 70, 82 (1973).

19        In *Lefkowitz*, the "State sought to interrogate individuals about their transactions with the State

20  and require them to furnish possibly incriminating testimony by demanding that they waive their

21  immunity and by disqualifying them as public contractors when they refused." *Id*.  The State argued

22  that what was true for state employees, simply did not apply to public contractors. *Id.* at 82-83.  The

23  district court disagreed.  In its holding, the Supreme Court agreed with the lower courts holding and

24  stated, "[w]e fail to see a difference of the constitutional magnitude between the threat of job loss to an

25  employee of the State, and a threat of loss of contracts to a contractor." *Id.*  ("A waiver secured under

26  threat of a substantial economic sanction cannot be termed voluntary."); *see also Garrity*, 385 U.S. at

27  497 ("The option to lose their means of livelihood or to pay the penalty of self-incrimination is the

28  antithesis of free choice to speak out or to remain silent.").

The government attempts to create a false dichotomy by arguing that a finding suggesting that Mr. Chrisman is protected under *Garrity* would amount to making all pilots, and other individuals who submit false information immune from prosecution.  This argument grossly overstates the present concern.  Here, the Court is tasked with determining whether Chrisman falls under the umbrella of *Garrity*, and whether his testimony, including the completed 8500-8 forms, was compelled.  The answer is yes.  Should Mr. Chrisman not complete the forms, he would be unable to obtain his medical certificate and therefore lose his job.  The simple answer to the question that government begs is that the FAA's regulations have been used time after time to remove unsafe pilots from the skies.  We are addressing the use of these compelled statements in a criminal case, not an administrative proceeding.  The administrative proceedings, like the internal affairs proceedings in the police situation, can address the safety of the flying public.  Here we also need to protect the constitutional rights of this charged pilot.  His rights deserve protection and recognition here.  The statements at issue should be found to be compelled and thus "immunized" for purposes of this criminal case.

**C.   THE ITEMS SOUGHT TO BE SUPPRESSED DO NOT FALL UNDER THE UMBRELLA OF *SHAPIRO***

The government also argues that privileges do not apply to records that kept pursuant to valid regulatory scheme.  *See Shapiro v. United States*, 335 U.S. 1, 17-18 (1948).  Although true, the holding in *Shapiro* is inapplicable to the present case.

First, *Shapiro* does not consider records created during an ongoing investigation without consent.  Meaning, records—such as Memorandum's of Interviews created after the fact—do not fall under the umbrella of *Shapiro*.  Second, to the extent the government is arguing the Form 8500-8 is not protected by a privilege due to being a record kept pursuant to a valid regulatory scheme, its argument is unpersuasive.  *Shapiro* considered whether corporate records kept pursuant to a regulatory scheme could be compelled without an individual's consent.  In making its ruling, the court found that the corporate records were capable of compelled production due to the required records exception.  "[The] required records exception provides that documents maintained pursuant to a valid regulatory scheme possess certain public aspects sufficiently analogous to public documents to warrant limited disclosure notwithstanding Fifth Amendment Concerns."  *In re Kenny*, 715 F.2d 51, 53 (2nd Cir. 1983) (internal

quotations omitted).  To fall within this exception, the documents "(1) must be maintained pursuant to an administrative scheme that is 'essentially regulatory;' (2) must be of a kind which the regulated party has customarily kept; and (3) must have assumed 'public aspects' which render them at least analogous to public documents."  *Grosso v. United States*, 390 U.S. 62, 67-68 (1968); *see also Shapiro v. United States*, 335 U.S. at 34-35.

Thus, to fall under the required records exception, the government must demonstrate that the records meet all three elements.  Even assuming arguendo that the government can establish that the records meet the first two elements, the government cannot establish that the medical records assume some "public" aspect which render them analogous to public documents.  *See Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1084 (9th Cir. 2007) (identifying medical information as protected by HIPAA which will "ensure the integrity and confidentiality of information"); *See also Skinner v. Ashan*, No. CV-04-2380-JBS, 2007 WL 708972 at *3 (D.N.J. Mar. 2, 2007) (finding that medical records were not of general interest to public health or safety).  The Form 8500-8 and similar medical documents contain private and confidential medical information which serve no public purpose.  The government cites to no case law, and we are aware of no authority where the court has held that medical records fall into the same exceptions accorded to the records exception.[6]

### D.   CONSENT WAS NOT PROVIDED BY CHRISMAN THROUGH THE FORM 8500 STATEMENT OF PRIVACY

The government argues that the Statement of Privacy protects the release and disclosure of the medical information in the FAA form 8500-8.  In particular, the government simply states that:

> [Chrisman] acknowledges these records and information in these records may be used" (e) disclose information to another Federal agency, or to a court or an administrative tribunal, when the Government or one of its agencies is a party to a judicial proceeding before the court or involved in administrative proceedings before the tribunal; and (f) to disclose

---

[6] Although the holding *In re Kenny*, determines that medical records kept for the purpose of documenting a physicians conduct and potentially related to his misconduct fell into the recorded records exception, the same set of facts are not applicable here. Here, the records were not kept for an ongoing review of medical professionals, and thus no public aspect exists. *See In re Kenny*, 715 F.2d at 53.

1   information to other Federal agencies for verification of the accuracy or

2   completeness of the information;

3  (Dkt. 34, U.S. Opposition to Motion to Suppress, p. 4)

4      No further analysis is given.  Here, however, the interview did not occur in a court proceeding

5  where Mr. Chrisman was present to object.  Further, there is no other federal agency involved.  This was

6  obtained out of court for the agents' use in building their Title 18 case against Mr. Chrisman.  The

7  privacy notice does not cover this situation, and the government has failed to establish otherwise.

8  Moreover, as discussed above, there is no evidence in the record that Mr. Chrisman knowingly read and

9  understood this tiny type at the bottom of the form.  The government has not established that Mr.

10  Chrisman knowingly and voluntarily waived his rights to privacy.

11      **E.**    **MR. CHRISMAN'S MEDICAL INFORMATION WAS UNLAWFULLY**

12         **OBTAINED, AS SUCH ANY USE IS A FRUIT OF THE POISONOUS TREE**

13      The government argues that its intended use of the medical information of Mr. Chrisman is

14  lawful and therefore permissible.  Disregarding Mr. Chrisman's disagreement with that assertion, even if

15  the government's ultimate use is lawful, the method it obtained the information was not lawful.  By

16  failing to obtain consent, obtain a warrant, or obtain a subpoena, the government put the cart before the

17  horse.  The government sought information it believed would support its case without considering the

18  ultimate repercussions of unlawfully obtaining the information.  *See U.S. v. Ceccolini*, 435 U.S. 268,

19  289 (1978) (holding that "fruits of the poisonous tree must be excluded").

20      **F.**    **AN EVIDENTIARY HEARING IS REQUIRED**

21      In passing, the government has also suggested that Mr. Chrisman has failed to make a showing

22  for an evidentiary hearing.  Mr. Chrisman disagrees.  First, there are factual issues that need to be

23  resolved.  Mr. Chrisman has declared that he did not consent, and never waived his right to privacy for

24  his medical and mental health records.  The government argues waiver was unnecessary because of the

25  terms of the Statement of Privacy.  Although there is no factual dispute as it related to the Form 8500-8

26  with those two arguments, one exists squarely with the communications with Dr. Brath. The agents who

27  interviewed Dr. Brath are necessary at the hearing to explain when they met Dr. Brath, what warnings

28  they provided him, identify any reservations Dr. Brath had in his communications with the agents and

1  further, discuss what authority the agents had to conduct the ultimate interview of Dr. Brath especially

2  where, as here, Dr. Brath indicated he was unwilling to disclose more information without the consent of

3  Mr. Chrisman.  It is curious that the government has supplied no declaration from Dr. Brath.  It is

4  unclear how the government can prevail on this motion without the Court believing testimony from Dr.

5  Brath about his views of how he interacted with Mr. Chrisman in the past.  Mr. Chrisman objects if the

6  government seeks to bring forth a late declaration from Dr. Brath.

7           Second, the government has relied heavily on the declaration of Dr. Susan E. Northrup, M.D.,

8  M.P.H. in support of its Opposition.  In doing so, the government has sought to have her testimony

9  entered without allowing Mr. Chrisman a chance to cross-examine her.  In particular, by asserting the

10  validity of her testimony, the government supplemented the factual record with new information

11  squarely contradictory to that of Mr. Chrisman, and in some instances, contradictory to the testimony of

12  individuals within the Memorandums of Interview the government seeks to rely upon.  Her testimony

13  alone creates the need for an evidentiary hearing to determine whether a motion to suppress is proper.[7]

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

27  [7] Mr. Chrisman seeks an evidentiary hearing on the October 8, 2019 hearing date.  Alternatively, should the court believe more time is required to allow all required witnesses to be present at the hearing, Mr.

28  Chrisman is amenable to holding the hearing and the ultimate determination on the Motion to Suppress on another date, while holding the trial date as is.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.    CONCLUSION

The government has conceded that a psychotherapist-patient privilege existed between Mr. Chrisman and his treating AMEs.  The government has also failed to demonstrate that Mr. Chrisman's statements, and his completed FAA Form 8500-8's were not compelled statements under *Garrity*.  For the foregoing reasons, Mr. Chrisman's motion to suppress evidence should be granted in its entirety.

Mr. Chrisman also requests the right to cross the government's declarant, Dr. Northrup.

**LAW OFFICES OF JONATHAN D. McDOUGALL**
Jonathan D. McDougall

DATED:  October 1, 2019

**FOLEY & LARDNER LLP**
Pamela L. Johnston

By:  */s/ Pamela L. Johnston*  _____
PAMELA L. JOHNSTON
Attorneys for Defendant GREGORY JAMES CHRISMAN