Pages 1 - 57

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) NO. CR 18-00390 VC |
| | ) |
| GREGORY JAMES CHRISMAN, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

San Francisco, California
Thursday, November 14, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
        DAVID L. ANDERSON
        United States Attorney
        450 Golden Gate Avenue
        San Francisco, California  94102
  BY: **AJAY K. KRISHNAMURTHY**
       **DAVID WARD**
       **ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
        FOLEY & LARDNER LLP
        555 S. Flower Street - Suite 3500
        Los Angeles, California  90071
  BY: **PAMELA L. JOHNSTON**
       **ATTORNEY AT LAW**

Reported By: Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
           Ana M. Dub, CSR No. 7445, RDR, CRR, CCRR
           Official Reporters

1    **Thursday - November 14, 2019**                    **10:03 a.m.**

2                        **P R O C E E D I N G S**

3                           **---oOo---**

4         **THE CLERK:**  Calling Case Number 18-cr-00390, U.S.A.

5    vs. Gregory James Chrisman.

6         Counsel, please step forward and state your appearances

7    for the record.

8         **MR. KRISHNAMURTHY:**  Good morning.  Ajay Krishnamurthy

9    for the United States.

10        **THE COURT:**  Good morning.

11        **MS. JOHNSTON:**  Good morning, Your Honor.  Pamela

12   Johnston for Mr. Chrisman.  Mr. Chrisman is present in court.

13        **THE COURT:**  Good morning.

14        Good morning, Mr. Chrisman.

15        **THE DEFENDANT:**  Good morning.

16        **THE COURT:**  Okay.  So one thing.

17        Kristen, can you print for me or e-mail to me the

18   Superseding Indictment?  I don't have it in the folder, or I

19   can't find it in the folder.

20        So the first question that I have, I mean, I understand we

21   have an application for permission to plead guilty to Counts 1

22   and 2, and I wanted to ask how this -- if you-all have views

23   about how this affects the upcoming trial on the remaining

24   counts.  Are we still planning on going forward with trial in

25   December?

1          **MR. KRISHNAMURTHY:**  Your Honor, I've relayed this to

2    Ms. Johnston as well, but I think my request for now is to keep

3    the trial date.  I think after this plea goes through, I'll

4    need to go back and confer with my office on how to proceed

5    with the outstanding counts.

6          **THE COURT:**  Okay.  Any thoughts from the Defense?

7          **MS. JOHNSTON:**  There was also some discussion with the

8    Government that they might go back and supersede again.  I

9    don't believe it was to add anything substantive.  I think it

10   was just to make the counts a little sharper.

11          I guess -- I was thinking it was going to happen today,

12   but what the Government counsel told me this morning it's not

13   going to happen today so -- and maybe it won't happen at all.

14   I think this is tied up with the issue of, you know, what are

15   they going to do about actually going to trial on the other

16   counts.

17          So I think we need to have some date of when we know, you

18   know, for sure whether we -- if we're going to trial, what's it

19   going to look like, because we have a lot of papers due to the

20   Court today.  We have our jury instructions, et cetera,

21   et cetera.  We can -- I think we'd be prepared to file them.

22   We just may have to adjust.  So it's going to make the pretrial

23   conference I think a little ugly is the only thing I'm

24   predicting.

25          **THE COURT:**  Well, so in terms of what you're prepared

1    to file today, are these *motions in limine* and jury

2    instructions and whatnot based on -- or maybe the

3    *motions in limine* have already been filed?

4            **MS. JOHNSTON:**  They've been filed.

5            **THE COURT:**  And the *motions in limine* I think, I'm

6    guessing, would have been different if he had already pled

7    guilty to these two counts?

8            **MS. JOHNSTON:**  I think our *motion in limine*, maybe the

9    Government can address it, will be -- I think they won't now

10   fight us because it had to do with bank records, and I can't

11   imagine why the bank records would be relevant to the

12   obstruction counts.  It had some relevance.  It certainly had

13   some relevance to the false statements because there were

14   payments from the VA that were in the bank records.  So that

15   one might get mooted.

16       The other ones, I think it's just a little bit of tweaking

17   from what the oppositions we have due today so I think we're

18   fine in terms of being able to write them.

19       The places where I saw some changes that could occur

20   depending on the wording would be the substantive charges in

21   the jury instructions.  So we could have a little rewording

22   would be my sense.  Obviously description of the case, but

23   that's a page so that's not that hard to do.

24           **THE COURT:**  Would it be helpful to give you -- so

25   what's being filed today?  Oppositions to *motions in limine* and

1    jury instructions, joint proposed?

2          **MS. JOHNSTON:**  Right, and all the other pretrial

3    papers.  You know, the *voir dire* and all that.

4          **THE COURT:**  Right.  So would it be helpful to give

5    you, you know, a one-day or a two-day extension on those

6    filings to --

7          **MS. JOHNSTON:**  It would.  I think so.

8          **MR. KRISHNAMURTHY:**  I think that would be helpful.

9          **MS. JOHNSTON:**  Yeah, I do.

10         **THE COURT:**  I think that would probably be helpful for

11   all of us to have a better understanding of what needs to be

12   decided and what's been mooted or how something's been changed

13   or whatever.

14         **MS. JOHNSTON:**  Yeah.  And I don't think it's going to

15   shorten the time for the Court.  I think it will still be far

16   enough ahead that it will be fine.

17         **THE COURT:**  Yeah.  I think it will be better.  And

18   just make clear in whatever you file -- what do you want?  A

19   day?  Two days?

20         **MS. JOHNSTON:**  I think Monday is fine, Your Honor.

21   That would be great.

22         **THE COURT:**  Okay.  So why don't you file them by

23   Monday noon.

24         **MS. JOHNSTON:**  Okay.

25         **THE COURT:**  But if you could use that time to really

```
 1   make an effort to, you know, adjust the jury instructions,

 2   adjust the -- you know, adjust the jury instructions, state

 3   clearly in the oppositions and in some other filing, if you

 4   want to make some other filings, you know, explaining what's

 5   changed and what you're opposing, what you're not opposing,

 6   just make the effort to make all of that clear so we don't have

 7   to sift through it.

 8         MS. JOHNSTON:  Fair enough.

 9         MR. KRISHNAMURTHY:  Yes, Your Honor.

10         THE COURT:  So that's good.  And then as far as a

11   date, I mean, you know, it sounds like from what you described

12   about the possible Superseding Indictment, it may be designed

13   to address some of the concerns I had about the vagueness of

14   the allegations in the Superseding Indictment.

15         MS. JOHNSTON:  That's what I'm hoping, but I haven't

16   been told so I'm not -- I'm not certain.

17         MR. KRISHNAMURTHY:  That's correct.  I can represent

18   to the Court that we acknowledge your concerns and the concerns

19   that Ms. Johnston raised.  If we do seek a Superseding

20   Indictment, it will be based on the same conduct that we've

21   already described.  It will be based on the same discovery, but

22   it would narrow the issues for trial and address some of those

23   concerns about the specificity of the charges.

24         THE COURT:  Okay.  So it does seem to me -- I mean, we

25   have a trial date of -- what is it?  December 5th or something?
```

1            MR. KRISHNAMURTHY:  2nd.

2            MS. JOHNSTON:  2nd.

3            THE COURT:  December 2nd?  So it does seem to me that

4    we really do need to set a deadline for that to happen.  I

5    mean, there is -- I know that the Government has a lot of

6    leeway in terms of superseding, but there are limits to that

7    leeway and we're now, you know, two weeks from trial.

8            MR. KRISHNAMURTHY:  Yes, Your Honor.  What I would --

9            MS. JOHNSTON:  May I have a moment with Government

10   counsel?

11           THE COURT:  Sure.

12           MS. JOHNSTON:  Thank you.

13                    (Counsel conferring.)

14           MS. JOHNSTON:  We would like to monkey with your

15   schedule a little, if you don't mind.

16           THE COURT:  Okay.

17           MS. JOHNSTON:  The Government's days for superseding

18   are Tuesdays and Thursdays and, frankly, it's in the Defense's

19   interest to give them a few more days in case what they decide

20   to do is --

21           THE COURT:  Drop the charges.

22           MS. JOHNSTON:  -- drop the charges.  Exactly.  So

23   we're not interested in pushing them as fast as we can.  On the

24   other hand, we want to stay on track for trial.

25       So if the Court could move our pretrial conference just by

1    a day, if we could move from the 21st to the 22nd, we would

2    know by the 21st, hopefully as early in the day as possible,

3    how the charges are slightly different.  Again, I'm not

4    expecting a lot of wording changes but maybe a few.

5         I've let the Government know that we've got a couple venue

6    issues that they can address by fixing it in the pleading.  So

7    I think we'd be set if we did it on the 22nd, if that's not too

8    close for the judge.

9              THE COURT:  No.  I mean, I was actually wondering if

10   it might make more sense to do it even a little bit later.

11             MS. JOHNSTON:  We could.  The week after is the

12   Thanksgiving holiday.

13             THE COURT:  It's Thanksgiving week, and I was trying

14   to largely keep that week clear, but I think it might --

15        Kristen, what else do we have?  Do we have anything else

16   on calendar that week?

17             THE CLERK:  There's just a couple -- there's one

18   CMC -- two CMCs and one criminal matter on Tuesday-Wednesday,

19   but Monday would be open.

20             MS. JOHNSTON:  That's fine with us, Your Honor.

21             THE COURT:  Why don't we do it on -- if we have a

22   criminal matter on Tuesday already, why don't we put the

23   pretrial conference on -- just put it on the criminal calendar

24   on Tuesday morning the 26th, and then we can -- that way we

25   leave Monday open and we can clear out Wednesday also.  We have

1   to come to work on Tuesday.

2          MS. JOHNSTON:  Your Honor, would it be possible,

3   because I like to fly up if I can, the morning of?

4          THE COURT:  Do it in the afternoon?

5          MS. JOHNSTON:  Could we do it in the afternoon?

6          THE COURT:  Sure.

7          MS. JOHNSTON:  Okay.  That would be great.

8          THE COURT:  On Tuesday?

9          MS. JOHNSTON:  Yes.

10          THE COURT:  Tuesday afternoon at 1:30.

11          MS. JOHNSTON:  Great.  Thank you, Your Honor.

12       So I think actually we don't have to change any of the

13   dates because they key off the pretrial conference date.  So

14   seven days before the pretrial conference date would be --

15          THE COURT:  All the oppositions would be due, like,

16   Tuesday.

17          MS. JOHNSTON:  -- due that Tuesday.  Yeah.

18          MR. KRISHNAMURTHY:  Thank you.

19          MS. JOHNSTON:  All right.

20          THE COURT:  I would still like you, however, to

21   complete those filings by -- well, if you don't mind, I would

22   like you to complete those filings by Monday.

23          MS. JOHNSTON:  Yes, Your Honor.

24          MR. KRISHNAMURTHY:  Yes, Your Honor.

25          MS. JOHNSTON:  No problem.

1          **THE COURT:**  Okay.  So it sounds like if there's going

2     to be a Superseding Indictment, it would be next Tuesday.

3          **MR. KRISHNAMURTHY:**  Either next Tuesday or next

4     Thursday.

5          **THE COURT:**  Okay.  And then in terms of the

6     application to enter a guilty plea, I received an electronic

7     copy of that and have been through it.  I didn't have any

8     questions about it.

9          Has the Government had a chance to review it and does the

10    Government have any concerns about it in terms of the factual

11    basis that it lays out or the elements of the offenses, or

12    anything like that?

13         **MR. KRISHNAMURTHY:**  Your Honor, I reviewed it and I

14    don't have any concerns.  The only thing that I wanted to note,

15    and I think this is legally fine, is that our Indictment

16    alleges two false statements in each count.  The factual basis

17    establishes one of them, which I think is legally sufficient.

18         **THE COURT:**  So I was going to ask about that.  Thank

19    you for reminding me.

20         So the application says "I'm pleading guilty to the second

21    prong of each of Counts 1 and 2"; right?

22         **MR. KRISHNAMURTHY:**  Correct.

23         **THE COURT:**  And so I was going back.  Is the -- I

24    don't have the -- probably by now I do have the Superseding

25    Indictment.  Let me --

1          **THE CLERK:**  You should.

2                    (Pause in proceedings.)

3          **MS. JOHNSTON:**  I'm sure one of us has an extra copy.

4          **THE COURT:**  Here it is.  I got it.  Kristen e-mailed

5     it to me right here.

6          **MS. JOHNSTON:**  Okay.

7                    (Pause in proceedings.)

8          **THE COURT:**  So just looking at Count 1, for example,

9     there's an allegation that he did not have -- there's an

10    allegation that he indicated on the form that he did not have

11    and never had a mental disorder of any sort despite having

12    represented to the Department of Veterans Affairs that he had

13    PTSD; and then the second allegation is that he indicated on

14    the form that he had never and did not currently receive

15    medical disability benefits despite having received

16    service-related medical disability benefits from the VA since

17    2011.

18         And so in that count you've pleaded two false statements

19    essentially.

20         **MR. KRISHNAMURTHY:**  That's correct.

21         **THE COURT:**  He's proposing to plead to one of them and

22    your view, like their view, is that this disposes of Count 1?

23         **MR. KRISHNAMURTHY:**  Yes, Your Honor.

24         **THE COURT:**  There's no -- nothing -- you don't want to

25    go to trial on the first prong of Count 1?

1          MR. KRISHNAMURTHY:  That's correct.

2          THE COURT:  Okay.  And same thing with Count 2?

3          MR. KRISHNAMURTHY:  Correct.

4          THE COURT:  Okay.  So is that, then, going to continue

5     to be an issue in the trial?

6          MR. KRISHNAMURTHY:  So there is -- that does relate to

7     the obstruction counts.  So there -- yes, it will still be an

8     issue at trial.

9          THE COURT:  Okay.

10         MS. JOHNSTON:  I think to be more precise, the counts

11    won't be at issue.  The evidence regarding the PTSD will likely

12    have -- could be sought to be admitted by the Government, maybe

13    by the Defense.

14         THE COURT:  Well, the evidence regarding the PTSD and

15    the evidence regarding the representations about mental health

16    conditions.

17         MS. JOHNSTON:  They could potentially seek to admit

18    them I would assume having -- you know, stuff's all kind of

19    interrelated.

20         THE COURT:  Yeah.

21         MS. JOHNSTON:  Part of our hope of pleading guilty is

22    that it will limit the scope of the evidence and we'll have a

23    shorter trial, but I can imagine the Government may view some

24    things as needing to come in for context.

25         THE COURT:  Okay.  Good.

1    That was the only question I had.  So the Government is

2    satisfied with the application then?

3         **MR. KRISHNAMURTHY:**  Yes, Your Honor.  There is --

4    there is one issue that I wanted to highlight for the Court

5    before proceeding to the plea, however.

6         The parties had initially intended to address this at the

7    pretrial conference, but last week we filed a notice of a

8    potential conflict of interest involving one of

9    Mr. McDougall's [sic] attorneys.  I think that potential

10   conflict is more salient to the obstruction counts than the

11   false statement counts, and so I'm not sure that anything needs

12   to be done at this time but I did want to highlight for the

13   Court as well -- that for the Court as well.

14        **THE COURT:**  One of Mr. McDougall's attorneys?

15        **MR. KRISHNAMURTHY:**  Sorry.  One of Mr. Chrisman's

16   attorneys, Mr. McDougall.  Mr. Chrisman --

17        **THE COURT:**  You said there's a potential conflict of

18   interest with Mr. McDougall as it relates to what?

19        **MR. KRISHNAMURTHY:**  As it relates to this case.  I

20   think the conflict comes into sharper focus with respect to

21   Counts 3, 4, and 5 than it does for 1 and 2.

22        But essentially the conflict arises because we have

23   alleged that Mr. Chrisman went to a potential witness and asked

24   that witness to make representations about having advised

25   Mr. Chrisman to fill out a form in a certain way.  One of those

e-mails in the course of that -- in the course of those
conversations Mr. Chrisman represented that he thought that
Mr. McDougall would have been in contact with the witness about
this issue and said that he would forward those communications
on to Mr. McDougall.

We have spoken with Mr. McDougall, and he's told us that
he was unaware of that conduct.  I have no reason to disbelieve
him.  I take him at his word.  I do think it raises the issue
of -- nonetheless, raises the issue of Mr. McDougall being a
potential witness of some of the conduct that would be relevant
to Counts 3, 4, and 5.

As the Court knows, there are a number of conversations
that can be interpreted a number of ways so even if
Mr. McDougall did not know that he was having these
conversations, Mr. Chrisman's interpretation may have been
different.

I think at this point --

**THE COURT:**  Or even if it wasn't different, there are
these e-mails which make reference to communications with
McDougall.

This does sound like a real concern to me, but what are
you -- so you said you filed something about this?

**MR. KRISHNAMURTHY:**  I did.  We filed a notice of
potential conflict last week.  I can hand up a copy for the
Court.

1          **THE COURT:**  So in your notice what do you propose to

2     do about this?

3          **MR. KRISHNAMURTHY:**  We didn't take a position on what

4     to do.  I think it's hard for us to know the depth of the

5     potential conflict at this point just because we don't know the

6     extent to which Mr. McDougall was aware of potentially the

7     issues that led to the obstruction-related conduct.

8       I think at this point because Ms. Johnston is here

9     representing Mr. Chrisman, I think it would be sufficient to

10    confirm that Ms. Johnston has reviewed the issue with

11    Mr. Chrisman and that he, nonetheless, intends to plead guilty

12    to Counts 1 and 2 after having learned of that issue.

13         **THE COURT:**  Well, I was thinking of it more as an

14    issue that we are going to need to think carefully about before

15    trial, but I take your point that, you know, perhaps it's

16    relevant to the decision whether to plead guilty to Counts 1

17    and 2 as well.

18         **MR. KRISHNAMURTHY:**  That's correct.  And I had

19    anticipated engaging in further discussions with Ms. Johnston

20    and Mr. McDougall on how exactly to address this prior to the

21    pretrial conference.

22         **THE COURT:**  Okay.

23       All right.  Ms. Johnston, do you have anything you want to

24    say about this?

25         **MS. JOHNSTON:**  Sure.  First, we do plan to file

 1    something.  I actually wanted to see if there was going to be a

 2    superseding today so that's what I was waiting on because I

 3    don't think this allegation or concern affects these two

 4    counts.  They're different in time and different in quality.

 5        They do potentially affect the three remaining counts --

 6    the contempt, witness tampering, and obstruction -- and so

 7    that's why we do need to address it.  I don't have them with

 8    me, but I do have declarations from Mr. Chrisman and

 9    Mr. McDougall that we will be filing with the Court.

10        In essence, Mr. McDougall says he -- well, anyway, I won't

11    go into the precision of it because I can't do it off the top

12    of my head.

13        Mr. Chrisman, if he has to, would waive any conflict

14    because he wants to keep Mr. McDougall as his counsel.  He

15    doesn't want him to become a witness.

16        What Government counsel and I talked about this morning is

17    the only way it would affect this case here at the guilty plea

18    would be if Mr. Chrisman was worried that he was going to lose

19    Mr. McDougall as his counsel for the trial, would he plead

20    guilty to, I don't know, somehow avoid that or something like

21    that.

22        And I said, you know, if that was an issue, we should

23    raise that with the Court.  It's not, in fact, factually an

24    issue.  That's not why he's pleading guilty.  He's pleading

25    guilty because he thinks it's in his best interest and he is

1   guilty of the crime he's pleading guilty to.

2       So it's fair to raise it because the question is:  Does it

3   affect this guilty plea at all?  I can say factually it

4   doesn't, and I've had a conversation with Mr. Chrisman about it

5   just to make sure he thinks the same thing, which he does but

6   he can answer for himself.

7       But, yeah, it could be an issue for purposes of the trial.

8   We have some suggestions of how to address it but it's sort of

9   not for today.

10      **THE COURT:**  Right.  It seems to me that it falls in

11  the category -- within the general category of, you know,

12  you're proposing to plead guilty to these two counts and each

13  of these counts carries a maximum of five years, and that means

14  that you're exposing yourself to potentially 10 years in

15  prison; and on top of that --

16      **MS. JOHNSTON:**  Yeah.

17      **THE COURT:**  -- you know, the trial on the remaining

18  counts could go really badly, and this might be one reason why

19  it goes really badly.  There could be many other reasons why it

20  goes really badly.  And it could go really badly and then the

21  sentencing following the trial on those counts could also go

22  really badly.

23      And so, you know, by pleading guilty to these two counts,

24  you know, you're not protecting yourself from, you know, either

25  a 10-year sentence with respect to these two counts or from,

1    you know, potential even more severe sentence on top of that

2    from the remaining counts.  I mean, it seems to me this is one

3    of many ways that things could go badly for Mr. Chrisman that

4    he needs to be aware of.

5              MS. JOHNSTON:  Agreed, Your Honor.

6              THE COURT:  Okay.  So has the application been signed?

7              MS. JOHNSTON:  It was signed --

8              THE COURT:  The one you sent to us was already signed?

9              MS. JOHNSTON:  Yeah.  We probably did it the wrong

10   way, Your Honor.  What we did was sign it in the office.

11   Mr. Chrisman met with Mr. McDougall, went through everything,

12   and then they signed it in the office and then we filed that.

13   So we could re-sign it in court if the Court wants.

14             THE COURT:  Well, only -- I don't really know if it

15   matters, but the application itself says "Signed by me in open

16   court" --

17             MS. JOHNSTON:  I noticed that.

18             THE COURT:  -- "in the presence of my attorney."  So

19   why don't you --

20             MS. JOHNSTON:  Why don't we go ahead and do that.

21             THE COURT:  -- have Mr. Chrisman sign it again.

22             MS. JOHNSTON:  Okay.  And that's on an unnumbered page

23   at the end.  So what I'm going to do, Your Honor, is I'm going

24   to have him sign below and then we'll put the date.  Today is

25   the 14th.

```
1          Okay.  And if you can sign here (indicating) and then
2     initial the date.
3                    (Defendant complying.)
4          MS. JOHNSTON:  And then we'll file it again.
5          THE CLERK:  I can take it.
6          MS. JOHNSTON:  Or you can take care of it.
7          And then on the next page, Your Honor, there's a
8     certification of counsel, and I'll sign below Mr. McDougall and
9     indicate the date of the 14th.
10                    (Pause in proceedings.)
11         MS. JOHNSTON:  Okay.  Thank you, Your Honor.
12         THE COURT:  Okay.  You can hand that to Kristen, and I
13    have the electronic copy here and that's fine for me.
14         And so now, Mr. Chrisman, as I'm sure your lawyer has
15    discussed with you, you need to answer a series of questions
16    and those answers have to be given under oath so I'll ask the
17    courtroom deputy to administer the oath now.
18         THE DEFENDANT:  Yes, Your Honor.  May I have a moment
19    with my attorney?
20         THE COURT:  Oh, take as much time as you need.  And,
21    by the way, if it needs to be more than a moment, you can go
22    have a seat there and we can have the hearings in our other
23    cases and you-all can talk or you can talk out in the hallway
24    or whatever.  There is no rush.  There's a rush in the sense
25    that there's a trial coming up, but in terms of making sure
```

1  that you have had adequate opportunity to discuss all of this

2  with your lawyer and think everything through carefully, there

3  were some issues that we just discussed here, if you need more

4  time, you want to go out in the hallway, come back, you know,

5  in half an hour or an hour, that's perfectly fine.

6          THE DEFENDANT:  Thank you, Your Honor.

7          THE COURT:  Do you guys want to do that?  Do you want

8  to continue this?

9          MS. JOHNSTON:  Why don't I just step aside for a

10  moment --

11          THE COURT:  Sure.

12          MS. JOHNSTON:  -- to find out if it's short or long.

13          THE COURT:  Okay.

14                  (Pause in proceedings.)

15          THE COURT:  Give me one second.

16                  (Pause in proceedings.)

17          THE COURT:  Okay.  Sorry about that.

18          MS. JOHNSTON:  Mr. Chrisman has a question of the

19  Court but permitted me to ask the question if you would.

20          THE COURT:  Sure.

21          MS. JOHNSTON:  So there was some discussion just a few

22  moments ago about if the case goes badly and the sentence could

23  be higher, and it was -- the Court had linked it together with

24  the discussion about his lawyer.  And I think in my own mind I

25  had separated it into the part where the Court is going to go

1   through what the exposure is here, but I don't think it was

2   that clear to Mr. Chrisman.  So if the Court could clarify.

3         **THE COURT:**  That's a very good question.  Thank you

4   for asking that.

5         So, first of all, you know, how things go -- let me -- the

6   first thing I want to make clear is how things go in the trial

7   would not, I think, affect the sentence necessarily on these

8   counts to which you are pleading guilty.  Each count to which

9   you are proposing to plead guilty today carries a 5-year

10  maximum term.

11        **THE DEFENDANT:**  Yes.

12        **THE COURT:**  So by pleading guilty to each of these,

13  you are exposing yourself potentially to 10 years in prison.

14        And then you're going to trial on the other three counts.

15  If you are convicted of those other three counts, you know, I

16  don't know what the maximum sentence is for those counts but

17  you will be exposing yourself potentially to a significant

18  amount of additional prison time as a result of conviction on

19  those three counts.

20        I don't know whether you would, in fact, get more prison

21  time.  I don't know -- I would need to -- we would need to see

22  how the trial goes and we would need to see -- I would need to

23  consider the Presentence Report that will be prepared on you

24  and the materials that both sides will submit in connection

25  with your sentencing hearing; but the information that comes

1   out at trial could be relevant -- you know, obviously could be

2   relevant to sentencing and could affect the sentencing on those

3   counts, and so you need to be aware that the trial will have

4   obviously potential consequences for the sentence that you

5   ultimately receive.

6            THE DEFENDANT:  Yes.

7            THE COURT:  Does that clarify the issue for you or is

8   there anything -- if you have any further confusion or need

9   clarification on anything that I said, please don't hesitate to

10  let me know.

11           THE DEFENDANT:  Okay.  No, to answer your question,

12  Your Honor.  You've made it much clearer so I think I have a

13  clearer understanding.  So thank you.

14           THE COURT:  Okay.

15           MS. JOHNSTON:  And the only correction I would make to

16  the Court is obviously the Court has to consider and will be

17  advising the defendant that the Court has to consider

18  Sentencing Guidelines of course.

19           THE COURT:  We'll get into that in the colloquy.

20           MS. JOHNSTON:  Of course.  And the Sentencing

21  Guidelines do include a plus two for obstruction and since we

22  don't have a Plea Agreement here, we have no agreement on what

23  the guidelines could be.  So if the Court believed after

24  listening to all the evidence, even if Mr. Chrisman was

25  acquitted on the obstruction counts, the Court might still find

1   by preponderance of the evidence that the plus two for

2   obstruction could apply.  So that's one way that going to trial

3   on those counts, even if acquitted, could still end up with a

4   higher guideline exposure.

5           THE COURT:  Higher guideline exposure or just a higher

6   sentence.

7           MS. JOHNSTON:  Absolutely.

8           THE COURT:  Because regardless of what the guidelines

9   say, they are only advisory and I will be applying the

10  statutory sentencing factors.  And if I conclude by a

11  preponderance of the evidence that Mr. Chrisman has given false

12  testimony, that's correct, that it could affect the sentence.

13      Okay.  And, Mr. Chrisman, you're nodding your head

14  indicating that you understand that.

15          THE DEFENDANT:  Yes, Your Honor, I believe I

16  understand that.

17          THE COURT:  Okay.  So let me go ahead and -- so are

18  you ready to proceed now?

19          MS. JOHNSTON:  Yes, Your Honor.

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Okay.  So I'll let the courtroom deputy go

22  ahead and administer the oath.

23          THE CLERK:  Please raise your right hand.

24                  (Defendant sworn.)

25          THE DEFENDANT:  I do.

1          **THE COURT:**  Okay.  Mr. Chrisman, now that you are

2     under oath, if you answer any of my questions falsely, the

3     Government can bring additional charges against you for perjury

4     or making false statements.  Do you understand that?

5          **THE DEFENDANT:**  Yes, Your Honor.

6          **THE COURT:**  Okay.  And I want to tell you that I

7     really appreciate the question that you asked and to emphasize

8     that if my questions start coming too fast, please do not

9     hesitate to ask me to slow down or ask me to repeat a question.

10         If you don't understand a question, you know, feel free to

11    ask me, feel free to call timeout and discuss it with your

12    lawyer.  This is not a speed test.  There's no penalty for

13    slowing the process down.  The only thing that matters is that

14    you fully understand all of the issues that we're discussing

15    here today.  Okay?

16         **THE DEFENDANT:**  Yes, sir.

17         **THE COURT:**  All right.  What's your full name?

18         **THE DEFENDANT:**  Gregory James Chrisman.

19         **THE COURT:**  Are you a U.S. citizen?

20         **THE DEFENDANT:**  Yes, sir.

21         **THE COURT:**  Where were you born?

22         **THE DEFENDANT:**  San Francisco, California.

23         **THE COURT:**  How old are you?

24         **THE DEFENDANT:**  58 years old.

25         **THE COURT:**  How far did you go in school?

1          **THE DEFENDANT:**  I completed undergraduate, college

2     undergraduate.

3          **THE COURT:**  Okay.  And are you currently under the

4     influence of any drug, medication, or alcoholic beverage that

5     would hinder your ability to understand the proceedings here

6     today?

7          **THE DEFENDANT:**  No, Your Honor.

8          **THE COURT:**  Okay.  And are you fully satisfied with

9     the advice and information you've received from your lawyer?

10         **THE DEFENDANT:**  Yes, Your Honor.

11         **THE COURT:**  You've had an opportunity to review the

12    application to enter a guilty plea before signing it?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  And you've reviewed that carefully?

15         **THE DEFENDANT:**  Yes, Your Honor.

16         **THE COURT:**  And you've had adequate opportunity to

17    discuss it with your lawyer before signing it?

18         **THE DEFENDANT:**  Yes, I have.

19         **THE COURT:**  Okay.  Are you confident that you

20    understand everything in the application?

21         **THE DEFENDANT:**  Yes, I do.

22         **THE COURT:**  Okay.  And nobody's made you any promises

23    or assurances that are not in the application to get you to

24    plead guilty?

25         **THE DEFENDANT:**  No, Your Honor, that's correct.

1          **THE COURT:**  Okay.  Nobody's threatened you in any way

2     to get you to plead guilty?

3          **THE DEFENDANT:**  No, Your Honor.

4          **THE COURT:**  You're pleading guilty of your own free

5     will because you are, in fact, guilty?

6          **THE DEFENDANT:**  Yes, Your Honor.

7          **THE COURT:**  Okay.  And let's talk about what you're

8     pleading guilty to.  The application says that you are pleading

9     guilty to Counts 1 and 2 of the Superseding Indictment, both of

10    which charge you with making a material false statement to the

11    Government in violation of 18 U.S.C., Section 1001(a)(2).  Is

12    that consistent with your understanding?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  And the application specifies that you're

15    only pleading guilty to the second aspect of each of the

16    counts, the one that makes reference to disability benefits.

17    Is that consistent with your understanding?

18         **THE DEFENDANT:**  That's what I understand, sir.

19         **THE COURT:**  Okay.  So just so that we're absolutely

20    clear, you're not pleading guilty and you're not admitting to a

21    factual basis for the allegation that you falsely stated that

22    you did not previously have a mental disability; is that

23    correct?

24         **THE DEFENDANT:**  That's correct, Your Honor.

25         **THE COURT:**  Okay.  Now, let's talk about the maximum

1    penalty for each of these counts.

2         For each count there's a maximum prison sentence of

3    5 years.  Do you understand that?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  And so I know we discussed this already,

6    but just to repeat and be clear, the sentences could be

7    consecutive to one another.  So by pleading guilty to both of

8    these counts, you are exposing yourself to a potential sentence

9    of up to 10 years in prison.  Do you understand that?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Okay.  You're also -- also, each count has

12   a maximum -- or for both counts there's a maximum supervised

13   release term of 3 years.  Do you understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  Okay.  And for each count there's a

16   mandatory special assessment of $100 and for each count there's

17   a maximum fine of $250,000.  Do you understand that?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Okay.  Now, in addition -- again, I know

20   we discussed this before but I want to say it again now that

21   you're under oath -- even if you plead guilty to those two

22   counts, the Government has the right to proceed to trial

23   against you on the remaining three counts of the Superseding

24   Indictment.  Do you understand that?

25             THE DEFENDANT:  I understand that.

1          **THE COURT:**  And if you are convicted on any of those

2    three counts, there could be an additional prison sentence

3    based on those three counts.  Do you understand that?

4          **THE DEFENDANT:**  Yes, Your Honor.

5          **THE COURT:**  And so by pleading guilty to these two

6    counts, you're not protecting yourself from further punishment,

7    including further prison sentences for those three counts.  Do

8    you understand that?

9          **THE DEFENDANT:**  Very clear.

10         **THE COURT:**  And, again, you know, the trial could go

11   badly and that could have a significant effect on the overall

12   sentence you receive in this case.  Do you understand that?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  Okay.  And there are a variety of ways it

15   could go badly.  One of the issues that was identified to me is

16   that there is a potential conflict of interest with

17   Mr. McDougall.  We don't know how that's going to be resolved;

18   but if you waive conflict of interest and, you know, evidence

19   comes in about your communications with Mr. McDougall, that

20   could adversely affect your chances at trial.  Do you

21   understand that?

22         **THE DEFENDANT:**  Yes, Your Honor.

23         **THE COURT:**  Okay.  And then as your lawyer astutely

24   noted, even if you are acquitted of those three counts, your

25   testimony in that case -- in that trial, if you choose to

1    testify, could affect your sentence on these two counts.  Do

2    you understand that?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Okay.  I'm looking at the application to

5    enter a guilty plea, and paragraph 3 and paragraph 5 contain a

6    description of what you did, and I want to just make sure that

7    you've had adequate opportunity to really focus on those

8    paragraphs and I want to make sure that they accurately

9    describe what you did.  Do they?

10             THE DEFENDANT:  (Defendant examines document.)  Yes,

11   Your Honor.

12             THE COURT:  Okay.  Thank you.

13             MS. JOHNSTON:  Your Honor, I have one correction.

14   There's a typo.  A digit got dropped when we retyped this.

15   Line 21 in paragraph 4 -- excuse me -- 5, should read

16   "December 2017" and we'll make that as an interlineation.  The

17   "7" got dropped.

18             THE COURT:  Okay.  Go ahead and change that.

19             MS. JOHNSTON:  I'm going to.

20             THE COURT:  And have Mr. Chrisman initial it.

21                  (Pause in proceedings.)

22             MS. JOHNSTON:  Thank you, Your Honor.

23             THE COURT:  Now, in your application there's reference

24   to the Sentencing Guidelines and you heard your lawyer mention

25   the Sentencing Guidelines.  The most important thing for you to

1  remember about the guidelines is that they are not binding on

2  me.   They are merely advisory.   The sentencing guideline

3  calculation is my starting point in deciding what the

4  appropriate sentence should be, but they are -- I have the

5  authority to go higher than what the guidelines recommend or

6  lower than what the guidelines recommend.   Do you understand

7  that?

8          THE DEFENDANT:   Yes, Your Honor, I do.

9          THE COURT:   Okay.   And even if the Government

10  recommends a particular sentence, I may have the authority to

11  go higher than that.   Do you understand that?

12          THE DEFENDANT:   Yes, Your Honor.

13          THE COURT:   Okay.   And I won't be able to reach my own

14  conclusion about the appropriate sentence for you until your

15  sentencing hearing after receiving the Presentence Report from

16  the probation officer and receiving the papers that will be

17  filed by both sides in connection with your sentencing hearing.

18  Do you understand that?

19          THE DEFENDANT:   Yes, Your Honor.

20          THE COURT:   And then at your sentencing hearing, when

21  I hand down your sentence, if you are not happy with that

22  sentence, that does not give you the right to withdraw your

23  guilty plea.   Do you understand that?

24          THE DEFENDANT:   Yes, Your Honor.

25          THE COURT:   Okay.   And then you understand that you're

 1   pleading guilty to felony offenses?

 2          **THE DEFENDANT:**  Yes, Your Honor.

 3          **THE COURT:**  And by pleading guilty to felony offenses,

 4   you may be giving up some of your civil rights, such as the

 5   right to vote, the right to hold public office, and the right

 6   to serve on a jury.  Do you understand that?

 7          **THE DEFENDANT:**  Yes, Your Honor.

 8          **THE COURT:**  And that includes, by the way, the right

 9   to possess a firearm.  Do you understand that?

10          **THE DEFENDANT:**  Yes, Your Honor.

11          **THE COURT:**  Okay.  Now, there was a --

12          **MS. JOHNSTON:**  Your Honor, there are some additional

13   collateral consequences that we put out -- put down in

14   Exhibit A that particularly apply to Mr. Chrisman.  He's been

15   advised by his counsel with regard to it, but --

16          **THE COURT:**  Because of his status as a pilot?

17          **MS. JOHNSTON:**  Because of his status as a pilot.

18          **THE COURT:**  Oh, I see that.

19       So have you -- this Exhibit A describing the collateral

20   consequences, have you had sufficient opportunity to discuss

21   those with your lawyer?

22          **THE DEFENDANT:**  Yes, sir, I have.

23          **THE COURT:**  And you understand those consequences?

24          **THE DEFENDANT:**  Yes, I do.

25          **THE COURT:**  Okay.  The other thing is that there was

1  at least one pretrial motion in this case, a motion to

2  suppress.  By pleading guilty to these counts, you are

3  relinquishing your right to appeal the pretrial rulings in this

4  case.  Do you understand that?

5          THE DEFENDANT:  No, I don't.

6          THE COURT:  Okay.

7          MS. JOHNSTON:  Can I have a moment, Your Honor?

8          THE COURT:  You can have a moment, but let me just

9  clarify.

10          MS. JOHNSTON:  Sure.

11          THE COURT:  So the one pretrial ruling that I remember

12  was a motion to suppress was filed and that was, if I remember

13  correctly, that motion to suppress was partly denied and then

14  part of it became moot; right?

15          MS. JOHNSTON:  That's right.

16          THE COURT:  After we clarified what evidence the

17  Government intended to introduce and what it didn't.

18          MS. JOHNSTON:  That's right.

19          THE COURT:  Was it a motion to suppress or was it some

20  other -- was it a motion --

21          MS. JOHNSTON:  It was titled a motion to suppress,

22  that would be right, heard on September 24th, and the Court's

23  recollection is correct.

24          THE COURT:  All right.  But, in any event, when you

25  plead guilty, you automatically relinquish the right to appeal

1    pretrial rulings, such as the denial of your motion to

2    suppress.  That's the law, that you relinquish your right to

3    appeal those pretrial rulings.

4        You would still have the right to appeal your sentence,

5    but you would -- and you would have the right to appeal your

6    conviction if you contend that your actual conviction came

7    about as the result of ineffective assistance of counsel or

8    something like that; but the pretrial rulings, like a motion to

9    suppress, you lose the right to appeal that.  Do you understand

10   that?

11       **THE DEFENDANT:**  Not fully.

12       **THE COURT:**  Okay.  So why don't you -- and so what

13   we're going to do now is I want to make sure that Mr. Chrisman

14   fully understands his rights in that regard, so we're going to

15   continue this hearing.  We're going to have one civil matter.

16   We're going to hear one civil matter, the Lyft case, and then

17   we will resume with this one.

18       **MS. JOHNSTON:**  Thank you, Your Honor.

19       May I clarify one thing before we go?

20       **THE COURT:**  Sure.

21       **MS. JOHNSTON:**  I actually have a different view of the

22   appellate rights because he's still going to trial on three

23   other counts.  So to the extent if the motion to suppress --

24   sorry -- if the motion to suppress has relevance to the three

25   remaining counts, and I'm not sure it does, but if it did, then

1  that issue could be preserved on appeal if convicted of the

2  three other counts and if it was a basis for appeal.  I think

3  it's kind of a theoretical point I've raised.

4        **THE COURT:**  Yeah.  I'm not sure that's right.  I mean,

5  I think that under Ninth Circuit law that may not be right.

6        **MS. JOHNSTON:**  Okay.

7        **THE COURT:**  And it's not an issue that I've looked at

8  recently, but -- and the Ninth Circuit law that I'm thinking of

9  is, you know, it doesn't speak to this kind of strange factual

10  scenario that we have.

11        **MS. JOHNSTON:**  Right.

12        **THE COURT:**  But I thought the statements of the

13  Ninth Circuit were pretty unequivocal about the relinquishment

14  of your right to challenge a pretrial motion if you've pled

15  guilty.  Well, you know, you might be right about that.  I

16  mean, maybe the point that we need to clarify, the point that

17  we need to make sure Mr. Chrisman understands is that there is

18  at least a significant risk --

19        **MS. JOHNSTON:**  Right.

20        **THE COURT:**  -- that he may be unable to appeal the

21  denial of his pretrial motions.

22        **MS. JOHNSTON:**  I think that's the way to go for a

23  Rule 11 hearing.

24        **THE COURT:**  Yeah.

25        **MS. JOHNSTON:**  But I'm not sure -- I'm not sure the

```
 1   Ninth Circuit would agree with the Court, but we can go --
 2          THE COURT:  And I'm not sure I would agree --
 3          MS. JOHNSTON:  With yourself.
 4          THE COURT:  -- with myself either, and you can offer
 5   any thoughts on this if you want after we come back.
 6          MS. JOHNSTON:  Thank you, Your Honor.
 7          THE COURT:  All right.  Thank you.
 8          THE DEFENDANT:  Thank you.
 9                  (Recess taken at 11:14 a.m.)
10             (Proceedings resumed at 11:32 a.m.)
11          THE COURT:  All right.  Recall Chrisman.
12          THE CLERK:  Recalling Case Number 18-cr-00390, U.S.A.
13   vs. Gregory James Chrisman.
14       Counsel, please step forward and state your appearances
15   for the record again.
16          MR. KRISHNAMURTHY:  Good morning again.  Ajay
17   Krishnamurthy for the United States.
18       I think Ms. Johnston just stepped outside.
19          THE COURT:  Are they still talking?  Because we can
20   just call the next civil case.  Why don't we just call the next
21   civil case.
22          MR. KRISHNAMURTHY:  Thank you.
23                  (Recess taken at 11:33 a.m.)
24             (Proceedings resumed at 11:58 a.m.)
25          THE CLERK:  Recalling Case Number 18-cr-00390, U.S.A.
```

1  vs. Gregory James Chrisman.

2       Counsel, please step forward and state your appearances

3  for the record again.

4       **MR. KRISHNAMURTHY:**  Good morning again.  Ajay

5  Krishnamurthy for the United States.

6       **THE COURT:**  Good morning.  You don't need to make your

7  appearances again.

8       **MS. JOHNSTON:**  Thank you, Your Honor.

9       **THE COURT:**  Let me just go back and pull up this file

10  again.  Interesting day today.

11      **MS. JOHNSTON:**  Uh-huh.

12      **THE COURT:**  A lot of variety.

13      Okay.  Go ahead.  Anything you want to tell me after your

14  discussions?

15      **MS. JOHNSTON:**  Yes, Your Honor.

16      **THE COURT:**  Okay.

17      **MS. JOHNSTON:**  We had a chance to talk.  Mr. Chrisman

18  and I had a chance to discuss the appellate stance that this

19  case sits in and go through the different scenarios, and he

20  understands that there is no assurance that he could, if

21  convicted after a trial, appeal the motion to suppress, but we

22  also cannot be assured that he cannot.  It is uncertain.  So he

23  has to understand that he may not be able to.

24      **THE COURT:**  Yeah.  I mean, I think that's right.  I

25  think you make a good point that there could be an argument --

1          MS. JOHNSTON:  Potential.

2          THE COURT:  -- you know, that the denial of the motion

3    to suppress could still be appealed as it relates not to the --

4    the more I think about it, the more I realize it wouldn't

5    undo -- even if -- I suspect that even if the ruling on the

6    motion to suppress were reversed, it probably would not undo

7    the guilty pleas -- the guilty pleas on these two counts.  It

8    may be that you could still appeal it and it would apply to the

9    convictions after trial on the additional three counts.  I

10   think that's probably the most likely outcome now that I think

11   about it, is that you will --

12         MS. JOHNSTON:  Yeah, I agree, given that the

13   Government during that hearing, you know, withdrew their desire

14   to call Dr. Brath during the trial on the 2001 counts, and we

15   were left with no evidence from Dr. Brath and -- other than --

16         THE COURT:  Right.

17         MS. JOHNSTON:  -- a foundation.

18         THE COURT:  That wasn't ruled on.

19         MS. JOHNSTON:  It wasn't ruled on.

20         THE COURT:  But the idea -- I think conceptually -- I

21   mean, we're speculating about how the Court of Appeals would

22   rule on a complicated issue, and so I think the main point is

23   there's risk; right?

24         MS. JOHNSTON:  That's right.

25         THE COURT:  But I think actually the point of that

```
1    case law is that, you know, you can't -- if you plead guilty,
2    you can't undo that by challenging a pretrial ruling.  And so I
3    could easily imagine a scenario where a court said, you know,
4    if Mr. Chrisman pled guilty to two counts and then were later
5    convicted after trial on three other counts, if the motion to
6    suppress were relevant to both of them, it would undo the
7    conviction on the three counts following the trial but it would
8    not undo the conviction on the two counts to which he pled
9    guilty.
10          MS. JOHNSTON:  I agree.
11          THE COURT:  But, anyway, I think, again, the most
12   important big-picture concept here is that there is significant
13   risk that Mr. Chrisman is losing the right to appeal any
14   pretrial rulings.
15          MS. JOHNSTON:  Correct.  And to be more clear, what
16   I've told him is if he feels strongly that he wants to preserve
17   that motion to suppress and wants to take it up on appeal, then
18   he shouldn't plead guilty today.  He should let it go to trial
19   and preserve all rights.
20          THE COURT:  That's well put.
21      Okay.  So I'll just -- Mr. Chrisman, I'll remind you
22   you're still under oath.
23          THE DEFENDANT:  Yes, sir.
24          THE COURT:  So do you understand that discussion that
25   I just had with your lawyer?
```

1          **THE DEFENDANT:**  I believe I do.

2          **THE COURT:**  Okay.  And you understand, you know, if

3    you -- the only way to assure your ability to appeal the denial

4    of the motion to suppress is by not pleading guilty to these

5    two counts?

6          **THE DEFENDANT:**  Can you repeat that, please, sir.

7          **THE COURT:**  Sure.  The only way to ensure your ability

8    to appeal the denial of the motion to suppress is to not plead

9    guilty to these two counts.

10         **THE DEFENDANT:**  I understand that.

11         **THE COURT:**  Okay.  Did you have anything to add on

12   this, by the way?

13         **MR. KRISHNAMURTHY:**  No, Your Honor.  I think that's

14   correct.

15         **THE COURT:**  Okay.  And that by pleading guilty to

16   these two counts, you're risking the possibility that you will

17   not be able to appeal the denial of the motion to suppress at

18   all as it relates to any of the counts.  Do you understand

19   that?

20         **MS. JOHNSTON:**  The counts that you're pleading guilty

21   to.

22         **THE DEFENDANT:**  I do understand that.

23         **THE COURT:**  No.  I was saying something different.

24   I'm saying there is a risk.  We don't know.  This is not an

25   issue --

1        **MS. JOHNSTON:**  Okay.

2        **THE COURT:**  I don't believe that this issue has been

3   addressed by the Appellate Courts, but there is a risk by

4   pleading guilty to these two counts today that you will not be

5   able to appeal the denial of the motion to suppress at all as

6   it relates to any of the counts, and you have to understand

7   that that is a risk; that by pleading guilty to these two

8   counts, you may be completely forfeiting your right to appeal

9   the pretrial ruling as to all counts.

10        **THE DEFENDANT:**  Okay.  I understand that.  And if I

11   could take a minute again to --

12        **THE COURT:**  Absolutely.

13        **THE DEFENDANT:**  Thank you.

14        **THE COURT:**  Yes.

15          (Defense counsel and defendant conferring.)

16        **THE DEFENDANT:**  Thank you, Your Honor.

17        **THE COURT:**  You said that you understand that, and are

18   you -- do you continue to wish to plead guilty to these two

19   counts?

20        **THE DEFENDANT:**  Sorry.  Yes.  Yes, Your Honor.

21        **THE COURT:**  Okay.  Maybe you were smiling because, of

22   course, you don't wish --

23        **THE DEFENDANT:**  I don't wish to plead guilty, but I'm

24   willing to proceed.

25        **THE COURT:**  Okay.  I understand.  Fair enough.

1        Okay.  Now let's talk about your trial rights.  I know

2   this is probably obvious to you, but you have the right to

3   continue to plead not guilty to these two counts.  Do you

4   understand that?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  And if you continue to plead not guilty to

7   these two counts, you have a right to a jury trial on them.  Do

8   you understand that?

9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  And at trial you would be presumed

11   innocent on these counts and the Government would be required

12   to prove its case beyond a reasonable doubt.  You understand

13   that?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  You'd have a right to counsel at trial and

16   at every other stage in the proceeding.  You understand that?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  You'd have the right to testify in your

19   defense.  You would also have the right not to testify; and if

20   you chose not to testify, that cannot be used against you at

21   trial.  You understand that?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  Okay.  You would have the right to

24   cross-examine any Government witness and you'd have the right

25   to call witnesses in your own defense.  Do you understand that?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  And by entering this guilty plea,

3    you're giving up the trial rights I just described as well as

4    all other rights associated with a criminal trial.  Do you

5    understand that?

6          THE DEFENDANT:  Yes, Your Honor, I do.

7          THE COURT:  Okay.  So is there anything else I should

8    be discussing with Mr. Chrisman before taking his plea?

9          MR. KRISHNAMURTHY:  The only -- one other issue,

10   Your Honor, is there are two elements of the offense,

11   willfulness and materiality, that are addressed only in

12   Exhibit A but not the application itself.  So I would just ask

13   the Court to confirm with Mr. Chrisman that he also adopts the

14   facts set forth in Exhibit A.

15         THE COURT:  All right.  Let me just take a look back

16   at that.

17                   (Pause in proceedings.)

18         THE COURT:  Oh, yes.  So I should ask you also, did

19   you -- this Exhibit A, which provides a further factual basis

20   for your guilty plea, did you have sufficient opportunity to

21   review this carefully and discuss it with your lawyer before

22   signing onto it?

23         THE DEFENDANT:  Yes, Your Honor, I did.

24         THE COURT:  And that it accurately describes what you

25   did?

1          **THE DEFENDANT:**  May I have a moment to reread it?

2          **THE COURT:**  Certainly.

3          **THE DEFENDANT:**  (Defendant examines document.)

4     Can I have another moment, please, sir?

5          **THE COURT:**  Sure.

6           (Defendant and Defense counsel conferring.)

7          **MS. JOHNSTON:**  Your Honor, there's one thing in

8     Exhibit A that is something that the defendant is not saying is

9     true.  He's saying that he expects the Government to be able to

10    represent something because it's something outside his own

11    knowledge, and that -- I'll just read it.  It's the last

12    sentence.

13         **THE COURT:**  Wait.  Hold on.  Let me pull it back up.

14         **MS. JOHNSTON:**  Sure.

15         **THE COURT:**  The last sentence?

16         **MS. JOHNSTON:**  On page 2.

17         **THE COURT:**  Okay.

18         **MS. JOHNSTON:**  In his factual basis he writes

19    (reading):

20          "We expect that the Government will represent to the

21     Court that Mr. Chrisman's checking 'No' to box 18Y in

22     December 2017 and June 2018 was material to the FAA's

23     decisions or activities."

24    That's something not within his control so he doesn't

25    actually know.

1          **THE COURT:**  Is that adequate?

2          **MR. KRISHNAMURTHY:**  Your Honor, I think if --

3          **THE COURT:**  I think that might not be adequate if

4    materiality is an element of the offense.

5          **MR. KRISHNAMURTHY:**  That's true.  I think Mr. Chrisman

6    would have to agree that the Government could prove that the

7    false statements are material; that is, that they had a

8    tendency to impact or influence the agency's activities.

9          **MS. JOHNSTON:**  We're saying that the Court can -- the

10   Government can prove that.  We're agreeing they can prove it.

11   It's just something not within his personal possession of

12   knowledge.

13         **THE COURT:**  Is that enough?

14         **MR. KRISHNAMURTHY:**  Yes, Your Honor.  If Mr. Chrisman

15   agrees that we could prove that beyond a reasonable doubt, I

16   think that's enough.

17         **THE COURT:**  Okay.

18      All right.  So --

19         **MS. JOHNSTON:**  And, Your Honor, it doesn't convert it

20   into an *Alford* plea.  He's pled guilty to all the rest.  As the

21   Court knows, there are times when there are things strictly

22   within the possession of the Government that the Government has

23   to represent.

24         **THE COURT:**  Right.

25      Okay.  So just on that specific issue, Mr. Chrisman, are

1    you agreeing that the Government will be able to prove beyond a

2    reasonable doubt that checking "No" to those boxes was material

3    to the FAA's decisions?

4            MS. JOHNSTON:   Those boxes being box 18Y on the two

5    different forms.

6            THE DEFENDANT:   Can you repeat the question, please,

7    sir.

8            THE COURT:   Sure.   Are you prepared to admit -- we're

9    kind of slightly changing the wording of this sentence down

10   here --

11           THE DEFENDANT:   Okay.

12           THE COURT:   -- and I'm inquiring whether you are

13   prepared to admit that the Government will be able to prove

14   beyond a reasonable doubt that your checking "No" to those

15   boxes was material to the FAA's decisions?

16           MS. JOHNSTON:   Or activities.

17           THE COURT:   Or activities.

18                      (Pause in proceedings.)

19           THE COURT:   Okay.   Here's what I'm going to do.   I'm

20   seeing that Mr. Chrisman is pausing and has some concerns about

21   that.   He has every right to pause and have concerns about

22   that; and, like I said, there's no penalty or punishment for

23   slowing down the process, but I believe that there have been

24   enough pauses and there have been enough times where you've

25   seemed concerned about this and that you've needed to speak

1  with your lawyer that I think we should go into recess and I

2  think that you should spend some more time discussing this

3  matter and any of the other matters we discussed today with

4  your lawyer before we proceed.

5       And what I would like to ask you to do in particular is to

6  read through again this factual basis in Appendix A and read

7  through it carefully and make sure you're comfortable admitting

8  to it and make sure no changes need to be made.  If any changes

9  need to be made, make sure the Government is satisfied with it.

10      And if you want to talk more about the appellate right,

11 you know, the right to appeal the pretrial rulings, you can do

12 that and you can discuss anything else that you need to discuss

13 with your lawyer.

14      I think it's more important that we ensure that you have

15 enough time on this stuff than it is to rush through the

16 process.

17      So when shall we come back?

18      **MS. JOHNSTON:**  This afternoon would be nice,

19 Your Honor.

20      **THE COURT:**  Okay.  I have relatively limited time this

21 afternoon.  So what?  2:30?

22                   (Pause in proceedings.)

23      **THE COURT:**  We'll come back at 2:30.  If we are unable

24 to get a reporter, Kristen will e-mail you and it will have to

25 be tomorrow or next week or something.

1          **MS. JOHNSTON:**  Okay.  Thank you, Your Honor.

2          **MR. KRISHNAMURTHY:**  Thank you, Your Honor.

3          **THE COURT:**  Thank you.

4               (Proceedings adjourned at 12:15 p.m.)

5               (Proceedings resumed at 2:27 p.m.)

6          **THE CLERK:**  Recalling Case Number 18-CR-00390.

7     Counsel, please step forward.

8          **MR. KRISHNAMURTHY:**  Good afternoon.  Ajay

9     Krishnamurthy and David Ward for the United States.

10         **THE COURT:**  Hello.

11         **MS. JOHNSTON:**  Good afternoon, Your Honor.  Pamela

12    Johnston with Mr. Chrisman.

13         **THE COURT:**  Hello.

14    Hello, Mr. Chrisman, again.

15         **THE DEFENDANT:**  Hello.

16         **THE COURT:**  So we were kind of at the finish line, but

17    I actually thought it was important to give Mr. Chrisman some

18    more time, not just to think about this, but to think about all

19    the things we discussed during the colloquy, just to make sure

20    Mr. Chrisman didn't have any last-minute doubts -- which would

21    be perfectly fine; it's his right -- and also to make sure that

22    Mr. Chrisman fully understood all of the issues we discussed.

23    And I didn't think that it would be good to seek that assurance

24    under the pressure of standing here in the courtroom with

25    everybody waiting for decisions to be made.  I thought a

1    time-out was in order.

2        So are we ready to proceed?

3            **MS. JOHNSTON:**  We are, Your Honor.  Thank you for the

4    break in the action.  Actually, it was helpful.

5            **THE COURT:**  Okay.

6            **MS. JOHNSTON:**  We went back through some things,

7    answered some questions.  He had a chance to talk to his wife.

8    So, all good.  And we're ready to proceed.

9            **THE COURT:**  Okay.  And so, Mr. Chrisman, I'll just ask

10   you the same thing.  I'll remind you that you're still under

11   oath.

12           **THE DEFENDANT:**  Yes, sir.

13           **THE COURT:**  And do you feel that the break between

14   this morning and now gave you enough time to think matters

15   through carefully, ask any follow-up questions that you wanted

16   to ask, either about this last issue we were discussing or any

17   of the other issues that we discussed during the morning

18   session?

19           **THE DEFENDANT:**  Yes, I do.  And I want to say

20   thank you for that.

21           **THE COURT:**  No.  No problem at all.  I can't emphasize

22   enough that if you have any remaining doubts or remaining

23   questions or you feel you need more time, you're totally free

24   to take it, and it would not result in any sort of penalty for

25   you on anything.

1          **THE DEFENDANT:**  Thank you, Your Honor.

2          **THE COURT:**  Okay.

3          **MS. JOHNSTON:**  One of the things we were able to do,

4    Your Honor, we talked to the Government.  They let us know the

5    primary evidence that they're relying upon for the materiality

6    comes from Ms. Northrup.

7          There is a declaration in this case from Ms. Northrup.  We

8    reviewed it over the break.

9          We also talked to Mr. McDougall about what his

10   cross-examination would be of Ms. Northrup because he had

11   prepared a cross because we thought she was going to be

12   testifying on the motion to suppress.

13         So we went through all of that; so we're fully up to

14   speed.

15         **THE COURT:**  Okay.  So then do we need to -- I know we

16   need to dot our I's and cross our T's on the factual basis

17   that's set forth in Appendix A.

18         But before that, is there anything to discuss with respect

19   to the other issues that we've been over so far?  Anything

20   further to discuss, for example, on appellate rights or

21   anything further --

22         **MS. JOHNSTON:**  No, Your Honor.

23         **THE COURT:**  -- to discuss on the penalties or anything

24   along those lines?

25         **MS. JOHNSTON:**  No.  The focus of the discussion really

1   was about this last element, the materiality element, since

2   it's something that the Government has the burden to prove and

3   will be making a representation.  So we needed to go back and

4   look at the factual basis for that representation, which we

5   did.

6          THE COURT:  Okay.  And then so where does that leave

7   us with respect to that?  Is it that you still want to

8   change -- you want to kind of alter that last paragraph to

9   state that the -- do you want to just admit to materiality, or

10  how is it going to work now?

11         MS. JOHNSTON:  I think it's what my colleague here had

12  actually suggested.  So I'm going to let him go back and do it

13  again.  It was --

14         MR. KRISHNAMURTHY:  Yes, Your Honor.

15         MS. JOHNSTON:  -- how the Government would prove

16  materiality, and then the defendant will agree that

17  the Government can prove materiality through that method.

18         MR. KRISHNAMURTHY:  And, yes, Your Honor.  If

19  the Court would permit, I'll just establish the legal element

20  and briefly lay out the facts --

21         THE COURT:  Perfect.

22         MR. KRISHNAMURTHY:  -- that we would tend to prove.

23      So the first is, the Government would prove beyond a

24  reasonable doubt that the false statement had a natural

25  tendency to influence or was capable of influencing

1    the Agency's, that is, the FAA's decisions or activities.

2    There are two primary ways in which we would prove that.

3         The first is through the expert testimony of Dr. Susan

4    Northrup, who is the FAA's Southern Regional Flight Director

5    and, among other responsibilities, is in charge of reviewing

6    airmen medical certificates in her region.  She would testify

7    that a positive answer on that question, the question about the

8    medical disabilities, would prompt further inquiry and

9    history-taking by either the FAA or the airmen medical examiner

10   himself.

11        I would also point the Court and Mr. Chrisman to the

12   second-to-last paragraph on his factual basis, when he explains

13   what happened to him when he finally disclosed that information

14   December 2018.  So he reports that he answered "yes" to that

15   box, the medical disabilities box.  Four months later, the FAA

16   asked for more information from him, which he supplied in the

17   form of the August 2011 VA findings.

18        To be more specific, in December 2018, Mr. Chrisman

19   disclosed that he had been receiving benefits from the Veterans

20   Affairs Administration.  And that follow-up letter from the FAA

21   was a response which asked for more information and,

22   specifically, a current summary of benefits and rated

23   disabilities from the Department of Veterans Affairs.

24             **THE COURT:**  Okay.  Thank you.

25        And so I want to seek confirmation from you that, from

1    your standpoint, it is sufficient for Mr. Chrisman to admit

2    that the Government could prove beyond a reasonable doubt that

3    the statements were -- or the failure to check the box was

4    material.

5         **MR. KRISHNAMURTHY:**  That's correct, along with the

6    other facts that I just stated in support of that statement.

7         **THE COURT:**  Okay.  So are you admitting to all of that

8    that was just described, Mr. Chrisman?

9         **THE DEFENDANT:**  Yes, sir, I am.

10        **THE COURT:**  You are.  Okay.  So then I'll ask you

11   again, just in case -- just to make sure we're clear.

12        Exhibit A, the narrative description of what you did in

13   Exhibit A, I gather that you have had a chance during the break

14   to go over that again with your lawyer.

15        **THE DEFENDANT:**  Yes, Your Honor.

16        **THE COURT:**  And that it accurately -- subject to the

17   change that we made to the last paragraph, that accurately

18   describes what you did?

19        **THE DEFENDANT:**  Yes, sir.

20        **THE COURT:**  Okay.  All right.  And so with that, is

21   there anything further that we should be discussing before I

22   take Mr. Chrisman's plea?

23        **MR. KRISHNAMURTHY:**  Not from our end.

24        **MS. JOHNSTON:**  I don't think so, Your Honor.

25        **THE COURT:**  Okay.  So, Mr. Chrisman, how do you plead

1    to Counts 1 and 2?  Guilty or not guilty?

2              **THE DEFENDANT:**  Guilty.

3              **THE COURT:**  I find that Mr. Chrisman is competent and

4    capable of entering an informed plea, that he's aware of the

5    nature of the charges and the consequences of the plea, and

6    that the guilty plea is a knowing and voluntary plea supported

7    by an independent basis in fact containing each of the

8    essential elements of the offenses.  I, therefore, accept the

9    plea, and the defendant is now judged guilty of the offenses.

10        And then, Mr. Chrisman, we will schedule a sentencing

11   hearing for you.  And before that, we'll refer you to the

12   Probation Office for the preparation of a presentence report.

13        And just to make sure you're aware of this, the purpose of

14   the presentence report is to assist me in determining what the

15   appropriate sentence should be for you.  You'll be asked to

16   meet with a probation officer.  You can have your lawyer there,

17   if you wish.  You'll also have the opportunity to object to

18   anything that is contained in the presentence report.

19        And I will consider the presentence report, along with all

20   other materials submitted by both sides in connection with your

21   sentencing hearing.

22        But before I do that referral and before we schedule a

23   sentencing hearing, I think we should wait until we've figured

24   out what's happening with the trial on the three remaining

25   counts.  Right?  So I gather that I will either see --

```
 1              THE CLERK:  You should probably do the actual
 2    formalized referral.
 3              THE COURT:  To Probation?
 4              THE CLERK:  Yeah.
 5              THE COURT:  Okay.
 6              THE CLERK:  And what they can do is create the file,
 7    and then they can stay all of their stuff.
 8              THE COURT:  Okay.
 9              THE CLERK:  So we'll have it done.
10              THE COURT:  So we'll formally refer Mr. Chrisman to
11    the Probation Office.
12         And, Kristen, do you want me to sign the plea application?
13              THE CLERK:  Yes.
14              THE COURT:  What's today?
15         MS. JOHNSTON:  14th.
16              THE CLERK:  14th.
17         MS. JOHNSTON:  Can we ensure that he doesn't have to
18    go see Probation until sometime later in December?
19              THE COURT:  Yeah.  I'm quite confident that they
20    wouldn't have time to see him anyway, but they would also
21    understand that it shouldn't happen before the trial.
22         So I gather, then, I will either see you -- when did we
23    schedule the pretrial conference for, now?
24         MS. JOHNSTON:  November 26th at 2 o'clock.
25              THE CLERK:  1:30.
```

| | |
|---|---|
| 1 | **MS. JOHNSTON:**  1:30.  Sorry.  1:30.  Yes. |
| 2 | **THE COURT:**  November 26 -- so that's less -- that's |
| 3 | about a week and a half from now or almost two weeks from now. |
| 4 | So I gather the next time I will see you is either |
| 5 | November 26th or -- well, I guess -- we're either going to |
| 6 | proceed with the pretrial conference on November 26th or you're |
| 7 | going to let me know that we don't need to. |
| 8 | **MR. KRISHNAMURTHY:**  That's correct. |
| 9 | **THE COURT:**  And so when are you going to let me know? |
| 10 | When should I plan on hearing from you as to whether -- if we |
| 11 | don't need to do the pretrial conference, then I assume we can |
| 12 | schedule the sentencing hearing -- will we need to see you on |
| 13 | the 26th for anything if the Government decides to drop the |
| 14 | three remaining counts? |
| 15 | **MR. KRISHNAMURTHY:**  I think that we probably could |
| 16 | schedule the sentencing -- in that event, we could probably |
| 17 | schedule the sentencing by stipulation -- |
| 18 | **MS. JOHNSTON:**  I would agree. |
| 19 | **MR. KRISHNAMURTHY:**  -- without appearance. |
| 20 | **THE COURT:**  Okay. |
| 21 | **MS. JOHNSTON:**  We'll just be in touch with your clerk |
| 22 | so that we find a date that works for you. |
| 23 | **THE COURT:**  Okay.  So all of that is fine.  But when |
| 24 | am I going to know -- when am I going to hear from you all |
| 25 | about what's happening? |

1          **MR. KRISHNAMURTHY:**  Yes, Your Honor.  So our filings

2     are due on Monday at noon.  We intend to submit all those

3     filings with the understanding that we'll proceed to trial.

4          I think that we will be in a position to let you know for

5     sure one way or the other by Thursday, by a week from today.

6          **THE COURT:**  So the 21st?

7          **MR. KRISHNAMURTHY:**  Yes.

8          **THE COURT:**  Okay.  So obviously, we will be doing a

9     bunch of work in preparation for the pretrial conference.  So

10    please let us know as soon as you know something.

11         **MR. KRISHNAMURTHY:**  I will, yes, Your Honor.

12         **THE COURT:**  Okay.  Thank you.

13         **MS. JOHNSTON:**  Thank you, Your Honor.

14         **MR. KRISHNAMURTHY:**  Thank you.

15         **THE DEFENDANT:**  Thank you, Your Honor.

16         **THE CLERK:**  Court is adjourned.

17         **MS. JOHNSTON:**  Oh, Your Honor, I'm sorry.  Can you

18    order him to remain on bail pending sentencing on these counts?

19         **THE COURT:**  Oh, yeah.

20         **MS. JOHNSTON:**  Sorry.

21         **THE COURT:**  Any objection?

22         **MR. KRISHNAMURTHY:**  No, Your Honor.

23         **THE COURT:**  All right.  So ordered.

24         **MS. JOHNSTON:**  Thank you.

25         **THE COURT:**  Thank you.

1          **THE CLERK:**  Court is adjourned.

2               (Proceedings adjourned at 2:39 p.m.)

3                    ---oOo---

4

5

6               **CERTIFICATE OF REPORTERS**

7          I certify that the foregoing is a correct transcript

8     from the record of proceedings in the above-entitled matter.

9

10    DATE:   Friday, February 7, 2020

11

12

13

14    _____

15       Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
             U.S. Court Reporter

16

17

18    _____

19       Ana M. Dub, CSR No. 7445, RDR, CRR
             U.S. Court Reporter

20

21

22

23

24

25